[No. 1494.]

THE STATE OF NEVADA, EX REL. JOSEPH R. RYAN, RELATOR, v. JAMES CRONAN, RESPONDENT.

QUO WARRANTO—CHARACTER OF OFFICE—WHEN WILL LIE—COMMON LAW— Under the common law an information in the nature of *quo warranto* will lie only for usurping a public office, and is never exercised in the case of a mere agency or employment determinable at the will of the employer.

IDEM—REMEDY EXTENDED BY STATUTE.—The provisions of section 3711 of the General Statutes, which provides: "An information may be filed against any person unlawfully holding or exercising any public office or franchise within this state, or any office in any corporation created by the laws of this state or the laws of the territory of Nevada," while it extends the remedy to any office in a corporation created under the laws of this state, the question of what constitutes an office within the settled rule is not affected by the statute.

IDEM—RIGHT TO POSITION OF SUPERINTENDENT OF MINING COMPANY.—*Quo warranto* will not lie to determine conflicting claims of appointment to a position as superintendent of a mining company.

MANDAMUS—REMEDY TO PUT ONE IN POSSESSION OF HIS COMPANY.—*Mandamus* is the only speedy and adequate means by which a person entitled to the position of superintendent of a mining company, which he is unlawfully precluded from, may be placed in the enjoyment of the right which he claims.

JURISDICTION OVER PARTIES TO ACTION—WHEN NECESSARY, RIGHT TO REVIEW ACTS OF FOREIGN CORPORATION.—This court having jurisdiction over the parties to this proceeding so far as necessary to determine the controversies arising in this case between them, it has the right to and will inquire into the power of the corporation and its officers and stockholders under the laws of the state of California, and review their acts and pass upon the question of their validity, although the court has no jurisdiction over the corporation itself, it being a corporation organized and existing under and by virtue of the laws of the state of California.

Corporation (California)—Power of President to Adjourn Meeting.—
   The president of a California corporation at his will alone has no
   authority to adjourn without day a stockholders' meeting against
   the expressed will of the stockholders there assembled.

Idem—Stockholders—Right to Elect Directors.—The statutes of Cali-
   fornia vest in the stockholders the right to annually elect a board of
   directors of said company. This right cannot be divested by any
   act of the directors themselves, much less by the president.

Idem—Stockholders' Meeting—Illegal Acts of President.—Where, at
   a stockholders' meeting of a California corporation, the president
   attempts to adjourn the same without the consent of the stockhold-
   ers and refuses to preside, or to permit the meeting to be continued
   in the office of the company, the stockholders may adjourn, without
   him, to another room and there hold their meeting.

Idem—Adjourned Meeting.—Stockholders may transact any business at
   any adjourned meeting that might lawfully have been transacted
   at the original meeting.

Idem—Stockholders—Election of Directors—Stock in Name of Trus-
   tee.—Stockholders of California mining corporations may elect
   directors, where the shares of stock stand in the names of trustees
   on the books of the company without the names of the cestuis que
   trustent being indicated, notwithstanding statute of California (1880,
   p. 131, sec. 2) provides that the names of the cestuis que trustent of
   stock shall be upon the books of the corporation.

Idem—Board of Directors—Election of, Valid Until Annulled.—The
   civil code of California (sec. 312) having provided that an invalid
   election of a board of directors may be set aside by petition of
   stockholders in the superior court, the supreme court of this state
   will regard the election of directors by a California mining corpora-
   tion as valid until annulled by the courts of California.

Original proceeding. Application for *mandamus* by the
State, on the relation of Joseph Ryan, against James Cronan,
Writ issued.

The facts sufficiently appear in the opinion.

*W. E. F. Deal*, for Relator:

I. The evidence shows, without any conflict, that at all of
the meetings of the stockholders mentioned there was a
majority of stock present, answering at the roll call.

II. There is no provision in the laws of California, or in
the by-laws of the company, giving the chairman of the
stockholders' meeting any power whatever except to preside,
and, in case of a tie, to give the casting vote.

III. The by-laws, having prescribed the duties and powers
of the chairman, are prohibitory of the exercise of any other
power upon the principle "*Expressio unius exclusio alterius.*"
(Am. and Eng. Ency. Law, vol 17, p. 87-9.)

IV.  No case can be found in which any such power as was exercised at the meetings of March 10th and 17th, by Mr. Fox, has been sanctioned.

V.  Section 312 of the civil code of the state of California is itself conclusive of the powers of the chairman. That section provides in very clear language that a stockholders' meeting, called for the purpose of electing a board of directors, shall not adjourn for any cause, except from day to day or from time to time, and then only when for any reason there is not present a majority of the subscribed stock or members, or no election had. The stockholders themselves were by this provision of the code prohibited from adjourning, there being a quorum present.

VI.  The chairman of the meeting having by his action ceased to be chairman of the meeting, the stockholders had it in their power, which they exercised, to organize and proceed with the business for which they were called together.

VII.  It will be seen, from the civil code and the by-laws of the Hale and Norcross Silver Mining Company, that the powers of the president of the Hale and Norcross Silver Mining Company, as chairman of a stockholders' meeting, called for the purpose of electing a board of trustees, are limited to presiding at the meeting, and that he has no power other or greater than any other stockholder at such meeting, except in case of a tie, to give the casting vote. Neither the board of trustees, nor the president, nor the stockholders themselves, have any power to postpone an annual election of a board of trustees, their term being fixed by law.

VIII.  Notwithstanding the laws of the state of California, and directly contrary to the by-laws of the company, the president of the Hale and Norcross Silver Mining Company, without any motion being made to that effect, without any action or proposed action of the stockholders, and against their desire, arrogated to himself the power of adjourning the stockholders' meeting on March 10th, upon the pretense that it was by an order of court, which order, the evidence shows, was made by his procurement.

IX.  This order of court was dissolved on March 17th, and the stockholders again met on that day at the hour to which that meeting had been adjourned by the stockholders them-

selves, it being the same time as fixed by the court, and a quorum being present, as ascertained by calling the roll, the president of the company, in defiance of the law, the decision of the court, and the by-laws of the company, again adjourned the meeting without day, refusing to entertain any motion or to allow the stockholders any voice whatever in the meeting. He assumed the power to try and decide for himself the right of the legally appointed proxies of the stockholders to represent their principals, and did decide without any proof being made of any fact upon which a decision could be based. No contest was made by any one claiming the right to represent any of the stock. No protest was made by any one against the right of those present to vote. No proofs were made, but the president, of his own motion, instituted an inquisition as to the rights of property.

X. Section 312 of the civil code was enacted for the very purpose of preventing such inquiries at an election, leaving to the parties aggrieved the right to petition the courts, as provided in section 315, and to right any wrong suffered by any stockholder whether present or absent.

XI. The answer of the defendant in this case rests upon the alleged power of the chairman to rule as he did, and if, as I have shown, he had no such power, the relator is entitled to the enjoyment of his rights as superintendent of the company. The defendant has no color of right to the position which he holds, for the reason that the term of office of the board which elected him has expired, and a new board has been elected, which elected relator to that position.

XII. The laws of California having provided a remedy for any stockholder aggrieved at any vote cast at an annual election for a board of directors, no attack can be made upon any vote cast at the election held on March 18, 1897, except in a proceeding under section 315. This special remedy, being provided for this special purpose, is prohibitory of any other, and an election cannot be attacked in any collateral proceeding.

XIII. In the Market-street Railway case, 109 Cal. 571, it was settled that stock may be voted by trustees who not only appear upon the books as such, but are really and in fact trustees for other persons, and that the trustee is the legal

owner of the stock, and as against the corporation and all the world, except his *cestui que trust*, no inquiry may be had touching his action in the premises.

*Wm. Woodburn* and *W. T. Baggett*, for Respondent:

I.   Mr. Fox, as chairman of the meeting, under our advice as attorneys for him and attorneys for the corporation, ruled and decided that no stock issued in the name of trustees without designating for whom the party held the stock in trust, both upon the certificate and upon the books of the corporation, could be recognized as stock votable at said or any election held by the corporation.   Mr. Fox unquestionably, under the · laws of this state, as determined by the supreme court of California, in the case of *Smith* v. *S. F. & N. P. R. R. Co.*, 47 Pac. Rep. 583, had the right, in the first instance, to determine whether or not the stock which was offered to be voted was such stock as could or should be voted at that election.

II.   If the stock presented by Mr. Grayson should not have been voted, as we contend, then it was the duty of Mr. Fox to declare the meeting adjourned, since it is evident that all the stock of the corporation, with the exception of about 2,800 shares out of 112,000 shares, could not be voted at all.

III.   We now ask the question: Could the stock of this corporation stand in the names of persons as trustees, when neither from the face of the certificate nor from the books of the corporation did it appear for what particular person or persons the stock was so held in trust?   We assert that, by the laws of this state concerning its own corporations, stock so issued could not be voted at an election held for the purpose of electing directors for a corporation.

IV.   The sections of the code referred to by counsel for petitioner relate to corporations generally, and can have no application to this case, because, by a law subsequently passed referring specially to mining corporations, the matter of the issuance of stock and voting the same is particularly declared, and the rule established to be other and different from that of corporations generally.

V..   By the very words of this section (sec. 2, act approved April 23, 1880) it is evident that in all cases stock in mining

corporations shall stand in the books of the company in the name of the real owners of such stock, but if issued in the name of trustees, then the party for whom he holds such stock in trust must be designated upon the books and also in the body of the certificate of said stock. It is admitted that the majority of the stock of this corporation has been issued contrary to the requirements of this section of the statute which we have quoted, but it is contended that notwithstanding the stock has been so issued in disobedience to the requirements of the law, yet the persons in whose names that stock stands upon the books of the company as trustees have the right to either vote the same or give proxies to others to vote the same; in other words, that this section of the law can be made, by the parties themselves having this stock so unlawfully issued, a dead letter, they claiming all the rights that they would have had the stock been lawfully issued in accordance with this section.

VI. The supreme court of the state of California has not to our knowledge passed upon or construed this section of the statute. If, however, the construction given to this statute by Superior Judges Seawell and Belcher is a correct one, then Mr. Fox's action in declining to receive the votes or proxies tendered by Mr. Grayson is fully sustained by the law, and it was his duty to declare that no election could be held, and to declare the right of himself and his associates to continue to perform the duties of directors of the Hale and Norcross Silver Mining Company.

VII. If they continued rightfully to perform such duties, then, of course, it was within their power to retain Mr. Cronan as superintendent of the corporation, and the action of Mr. Grayson and his associates in appointing Mr. Ryan was without authority of law, and gave to him no rights whatever as superintendent of the Hale and Norcross Mining Company.

VIII. Under the decision of the supreme court of Nevada in the Curtis case (3 Nev.) this proceeding cannot be maintained, for it appears that the defendant Cronan has a color of right to the position which he holds. If the facts of this case, and the law to which we have called attention, do not show a color of right, then it is difficult to understand the

meaning of that term. The facts of this case, and the law to which we have called the attention of the court, go far beyond establishing a mere color of right; they, in our judgment, establish an unquestioned right in the defendant to hold the position which he holds as superintendent of the company, by virtue of his appointment during the year 1896.

IX. The proceedings should be dismissed for want of jurisdiction, and, if not dismissed, then judgment upon the merits should go in favor of the defendants.

By the Court, BONNIFIELD, J.:

This is an application by relator, Joseph R. Ryan, upon due notice given, for a peremptory writ of *mandamus* to compel the respondent, James Cronan, to surrender and deliver to relator all the property in his possession belonging to the Hale and Norcross Silver Mining Company, situated in Virginia City, Storey county, Nevada, and to compel said James Cronan to admit said Joseph R. Ryan to the use and enjoyment of his right and office as superintendent of said company, from which relator alleges he is unlawfully precluded by said Cronan.

From the pleadings it appears, among other things, that the Hale and Norcross Silver Mining Company is a corporation, organized and existing under and by virtue of the laws of the state of California, and organized for the purpose of mining on its certain mining claim on the Comstock lode in Virginia City, Storey county, Nevada, and ever since its organization it has been and now is engaged in such mining; that each party claims to be the superintendent of said corporation, and claims the right to exercise the functions of said office, and to carry on said business of mining for said company, and that he is entitled to all the emoluments of said position; that on the 11th day of March, 1896, a board of directors of said company was elected for the then ensuing year, and on the —— day of May, 1896, the respondent was appointed the superintendent of said company by said board, and he immediately entered upon the discharge of his duties as such superintendent in conducting the said mining business of said corporation in said Storey county, and so continued till the 24th day of March, 1897; that on the 24th

day of March, 1897, the relator served upon the respondent notice of relator's appointment as superintendent of said company and notice of the respondent's removal therefrom, and demanded that respondent admit relator to the use and enjoyment of said office, and that he deliver to relator said property, which respondent refused to do; and that he continues to hold said office of superintendent, and as superintendent continues to carry on said mining business; that the relator bases his claim to the office of superintendent on an appointment made by the board of directors of said corporation duly elected, as he alleges, on the 18th day of March, 1897; that the respondent, in his answer, denies the validity of the election of said board on certain grounds named, and denies the validity of the appointment of the relator as such superintendent; and that the superintendent is at all times subject to the direction of the board of directors or the president of the company, and holds his office or position only at the will of the board of directors.

Upon filing the answer of respondent his counsel moved the court to dismiss the application of relator upon substantially the following grounds: That it is apparent on the face of the pleadings that the issue presented involves a determination as to the person properly elected to an office or entitled to exercise its functions, and that it likewise appears that the office is already filled by an actual incumbent, exercising the functions of the office *de facto* and under color of right; that *mandamus* will not lie to compel the admission of another claimant, nor to determine the disputed question of title, and that in such case the party aggrieved, who seeks an adjudication upon his alleged title and right of possession to the office, will be left to assert his rights by the aid of an information in the nature of *quo warranto*, which is the only efficacious and specific remedy to determine the question in dispute between the parties.

*Quo Warranto:* It seems that under the common law an information in the nature of *quo warranto* will lie only for usurping a public office—a substantive office—and not merely the function or employment of a deputy or servant held at the will and pleasure of another.

In *Darley* v. *The Queen*, 12 Cl. and Fin. 541, Tindal, C. J.,

delivering the opinion of the judges, said: "After the consideration of all the cases and dicta on this subject, the result appears to be that this proceeding by information in the nature of *quo warranto* will lie for usurping any office, whether created by charter alone or by the crown with consent of parliament, provided the office be of a public nature, and a substantive office, not merely the function or employment of a deputy or servant held at the will and pleasure of others; for with respect to such an employment, the court certainly will not interfere, and the information will not properly lie."

In *Queen* v. *Fox*, 8 Ellis and Blackburn, 938, a rule was obtained calling on the defendant to show cause why an information in the nature of a *quo warranto* should not be exhibited against him to show cause by what authority he claimed to exercise the office of clerk to the justices of Newport. Lord Campbell, C. J., said: "The rule must be discharged. First, the office is held during pleasure. * * * The justices may remove their clerk * * * merely for the purpose of replacing him by a person whom they think fitter for the office. The principles laid down in *Darley* v. *The Queen* govern this case." Wightman, J., said: "I am entirely of the same opinion. * * · * The clerk holds only during pleasure." Crompton, J., said: "I am of the same opinion. The clerk is removable at pleasure, and *quo warranto* will not lie for an office of such a tenure."

High, in his treatise on Extraordinary Legal Remedies (sec. 632), says: "In determining upon the propriety of a *quo warranto* information as a corrective of the usurpation of an office or franchise, an important distinction is to be drawn between the case of a public office proper, affecting public rights and interests, and that of a mere employment or agency, having no certain tenure, but determinable at the will of the employer. And while, in a generic sense, it is true that every office is an employment, yet the converse of the proposition by no means follows, and there are many employments, even of a public nature, which are not offices. While, therefore, the jurisdiction under discussion is well established as regards the usurpation of offices of a public nature, it is never exercised in the case of a mere agency or

employment determinable at the pleasure of the employer."
Spelling's Extraordinary Relief; sec. 1832, is to the same
effect.

An act regulating proceedings upon *quo warranto* and infor-
mation in the nature thereof (Gen. Stats. 3711) provides:
"An information may be filed against any person unlawfully
holding or exercising any public office or franchise within
this state, or any office in any corporation created by the
laws of this state, or the laws of the late territory of Nevada."

Although the above act extends the remedy to any office
in a corporation created under the laws of this state, the
question, what constitutes an office within the rule laid down
by the authorities above cited? is not affected by the statute.

High (sec. 332), *supra*, says: "And the doctrine holds
good, even under a statute extending the remedy to offices in
corporations created by the state, since the question of what
constitutes an officer is not affected by such a statute, and
must be determined by the common law."

Even if the Hale and Norcross Silver Mining Company
was a Nevada corporation, the facts being otherwise the same
as in this case, an information in the nature of *quo warranto*
would not lie, the position of the superintendent of the cor-
poration not being such an office as is contemplated by the
above act. In *People* v. *Hills*, 1 Lansing, 202, the supreme
court of New York held, under a statute extending the rem-
edy to any office in a corporation created by the authority of
that state, that "an action in the nature of *quo warranto* does
not lie against the secretary and treasurer of a railroad com-
pany holding his office as a mere servant thereof, and at the
will of its directors."

*Mandamus:* Under section 3469 of the General Statutes of
Nevada, the writ of *mandamus* may issue "to any inferior
tribunal, corporation, board or person to compel the perform-
ance of an act which the law specially enjoins as a duty
resulting from an office, trust or station; or to compel the
admission of a party to the use and enjoyment of a right or
office to which he is entitled, and from which he is unlaw-
fully precluded by such inferior tribunal, corporation, board
or person." Section 3470 of said statute provides: "This
writ shall be issued in all cases where there is not a plain,

speedy and adequate remedy in the ordinary course of law."

The case of *State ex rel. Curtis* v. *McCullough,* 3 Nev. 202, was an original application to this court for a writ of *mandamus* to compel McCullough to deliver to Curtis certain property belonging to the office of superintendent of the Overman Silver Mining Company, a California corporation, carrying on the business of mining in Storey county, Nevada, and to admit Curtis to all the rights incident to the position of such superintendent, both parties claiming to be the superintendent of said corporation.

This court in that case said: " The remedy by this writ, under the statutes of this state, seems much more extensive than it was at common law, and this case seems clearly to be embraced within its provisions. If the relator be the agent of the corporation, and the defendant is depriving him of the enjoyment of the right to act for his principal, that would seem to be precluding him from the enjoyment of a right to which he is entitled. The court has complete jurisdiction of the parties, and the power to determine which of them has the right to the position claimed by the relator. Why may it not afford the relator the relief to which he shows himself entitled? Admitted that the court has no jurisdiction of the corporation, but it has of the relator, who claims the enjoyment of certain rights acquired from the corporation. No judgment can be rendered here which will bind the corporation; this proceeding is simply between individuals, over which the courts of this state have jurisdiction, but who claim their rights from a foreign corporation; the source from which they derive their rights is a matter of no consequence if the court has jurisdiction of the individuals."

In that case the court further said: "We know of no other speedy and adequate means by which he [relator] may be placed in the enjoyment of the right which he claims," all of which may properly be said of the case at bar, and are applicable thereto.

On the above authorities, and for the foregoing reasons, we denied the motion of respondent to dismiss this proceeding.

The case was continued to the 18th day of May, at 10 o'clock A. M., for the purpose of hearing any competent evidence either party might offer, and for argument by counsel.

On that day, the evidence being closed, and oral arguments made by counsel of the respective parties, the case was submitted to the court, and time was given for the filing of briefs.

The principal questions to be determined are:

First—Has the relator, Joseph R. Ryan, the legal right to the position of superintendent of the Hale and Norcross Silver Mining Company?

Second—And if he has, is the respondent unlawfully precluding him from the enjoyment of such right?

Although this court has no jurisdiction over the said corporation in this case, it has jurisdiction over the parties herein, and, so far as necessary to determine the controversies arising in this case between said parties, it has the right to and will inquire into the power of said corporation and of its officers and stockholders, under the laws of the state of California, and review their act and pass upon the question of their validity.

On the 10th and 17th days of March, 1897, meetings of stockholders of said company were held at the office of said company in Room 3 of the San Francisco Stock Exchange building, 331 Pine street, in the city and county of San Francisco, state of California, for the purpose of electing seven directors of said company for the ensuing year, as successors of the directors who had been elected on the 10th day of March, 1896. On the day next before the meeting of the 10th day of March, Mr. Lynch, then a director and president of the company, resigned both offices, and M. W. Fox was elected in his stead by the board of directors as a director and as president of the company.

The by-laws of said company provide: "The president shall preside at all meetings of the trustees and of the stockholders. He shall have the casting vote at all meetings of the stockholders and trustees." The by-laws do not specify any other powers of the president respecting the meetings of the trustees or of the stockholders.

*The Meeting of the 10th Day of March:* At that meeting of stockholders M. W. Fox, the president, took the chair, called the meeting to order, and directed the secretary of the company, R. U. Collins, to "call the roll, and let it be known how much stock and proxies are here on the roll call." The

roll was called, and the secretary announced the result, to wit: "Total representation, 85,278⅜ shares; 14,765 claimed by Mr. Grayson in person; 68,853⅜ by proxy; 1830 shares of stock." Upon the said announcement by the secretary, W. T. Baggett, Esq., acting as the attorney of the president, Mr. Fox, and the corporation, asked R. R. Grayson several questions as to his ownership of the stock he represented. W. E. F. Deal, Esq., acting as the attorney of R. R. Grayson and the greater portion of the stockholders, advised Mr. Grayson not to answer said questions, upon the theory that it was not competent to go behind the books of the company in an inquiry as to the ownership of stock at a stockholders' meeting. Mr. Grayson refused to answer said questions.

Thereupon an order to show cause and an injunction were served upon R. R. Grayson, which had been issued on the said 10th day of March by Superior Judge Charles W. Slack in an action then pending in the superior court of the city and county of San Francisco, state of California, wherein M. W. Fox was plaintiff, and R. R. Grayson and forty-five other persons named were defendants.

As to the injunction the court's order was, to wit: "And pending the hearing and determination of this order to show cause, the defendants, their agent, servants and employees be, and each of them is, hereby restrained and enjoined from voting any of the stock of the Hale and Norcross Mining Company, a corporation, now standing in their names as trustees on the books of said corporation, at the election of officers of said corporation, to be held on the 10th day of March, 1897, or at any other time, and that they, and each of them, are hereby enjoined and restrained from giving to any person or persons power of attorneys or proxies ʼto vote said shares of stock standing in their names as trustees; and that they, and each of them, are enjoined and restrained from voting any of said stock as proxy or representative of any other person or persons in whose names or name the said stock stands as trustee on the books of said corporation."

Upon the service of the injunction the president declared, to wit: "I declare this meeting adjourned by order of the court." To this announcement of the president objections were made, and an appeal taken therefrom by members of

the meeting, all of which the president ignored, and again declared the meeting adjourned by order of the court. Then R. R. Grayson, a stockholder of the company, nominated A. J. McDonell, a stockholder, as chairman of the meeting, and William Bowers as secretary, who were elected as chairman and secretary respectively, by the meeting, the president not participating therein.

The president again announced that the meeting was adjourned, and requested those present to go somewhere else to hold a meeting, and told them to get out of the room, and that he wanted them to understand that they would have to hold a meeting at some other place, and he refused to allow them the office of the company in which to continue further to hold the meeting of the stockholders. The meeting was then adjourned by the stockholders to meet immediately in Room 11 of the same building. Immediately after said adjournment from Room 3, the stockholders met in said Room 11, and, upon the roll being called, stockholders representing 86,516⅔ shares of the capital stock answered present. All of said stock, except 2,754½ shares, stood on the books of said company in the names of trustees, and it was determined by the meeting that, by reason of said injunction having enjoined the voting of the stock standing in the names of the trustees, no election of directors could then be held, and the meeting adjourned to meet on the 17th day of March, 1897, at 1 o'clock P. M., in said Room 11.

*Injunction Dissolved:* In the forenoon of said 17th day of March, upon due proceedings had in said superior court in said action, said injunction was dissolved by said court, and the court ordered, to wit: " That the meeting for the election of officers of the corporation defendant be fixed for this day, at 1 o'clock P. M., at the office of said corporation."

*Adjourned Meeting of the 17th Day of March:* Pursuant to the adjournment of stockholders' meeting made by the meeting on the 10th day of March, aforesaid, the stockholders met in said Room 11, on the 17th day of March, at 1 o'clock P. M. A. J. McDonell, who was elected chairman of the meeting as aforesaid, being absent, G. W. Grayson was elected by the stockholders present as chairman of that meeting. The roll was called, and stockholders representing

82,000 shares of said stock were present. The meeting then immediately adjourned to said Room 3, the place designated by the order of the court last aforesaid as the place of meeting to elect said directors.

*At Room 3:* At Room 3, on the 17th day of March, at the hour of 1 o'clock P. M., M. W. Fox, the president, called the meeting to order, and, the roll being called, there were found to be present stockholders, as appeared by the books of the company, representing 86,326 shares of stock. Of this number of shares answering to the roll call, 42,890 were represented by proxies by R. R. Grayson, and 23,436 shares were represented by holders of certificates of stock, which certificates were duly endorsed. Upon the announcement of the result of the roll call by the secretary, R. R. Grayson moved that the meeting do adjourn till March 18th, at 1 o'clock P. M. G. W. Grayson, a stockholder, seconded the motion. The president refused to put said motion to the meeting, and ruled it out of order. R. R. Grayson appealed from the ruling of the president; the appeal was seconded by G. W. Grayson; the president refused to entertain the appeal. The motion was renewed and seconded several times by the same parties, and the president made the same ruling, and several appeals were taken from the rulings, which the president ignored. The president finally announced as follows: " There seems to be by the roll call 23,436⅓ shares of stock, and also it appears from that that there has been 62,890¾ by proxy. I find that the stock so presented has not been issued in accordance with the law of 1880; also, that the proxies of 62,890 shares are not in conformity with that law, and, as there is not a quorum of *bona fide* stockholders present, I now announce this meeting now stands adjourned." R. R. Grayson then appealed from the decision of the chair, of which the president took no notice. R. R. Grayson then moved that the meeting adjourn to meet at Room 11 in the same building immediately. The motion was seconded, and, being put to the meeting by Mr. Grayson, it was carried by a vote of the stockholders representing 82,000 shares of stock. We will, further along in this opinion, note and consider the proceedings of the stockholders' meetings held on the 17th

and 18th days of March at said Room 11 pursuant to said adjournment.

*The Powers of the President:* Had the president legal authority to adjourn without day either of the meetings held on the 10th and 17th days of March, at his will alone, and against the expressed will of the stockholders there assembled? If he had such authority to adjourn the meeting held on the 17th day of March at said Room 3, then the subsequent meetings and proceedings of the stockholders, had in said Room 11, are illegal. It is argued by counsel for respondent that the president had the right to determine whether or not the stock which was offered to be voted was such stock as could or should be voted, and that his rulings in that respect are subject to review only by the courts in a proper proceeding brought for that purpose, and that, at the meetings in question, the stock presented not being issued as required by the act of the legislature of California (Stats. 1880, 131), it was the duty of the president to adjourn said meetings. In support of the above contention counsel cites *Smith* v. *S. F. & N. P. Ry. Co.*, 47 Pac. Rep. 583. But that case is not in point or authority upon the question of the power of the president to adjourn stockholders' meetings at his will, as that question was not raised and was in no manner involved in that case.

Section 312 of Deering's Civil Code of California provides: * * * "Any regular or called meeting of the stockholders or members may adjourn from day to day, or from time to time, if, for any reason, there is not present a majority of the subscribed stock, or members, or no election had." * * * But no statute and no by-law has been cited which authorizes the president to adjourn a stockholders' meeting without day, or to a day, against the expressed will of the stockholders when in meeting assembled. We hold that the acts of the president in adjourning or attempting to adjourn said meetings were illegal; that, when he refused to preside further at said meetings, the stockholders had the right to proceed with the business of the meetings without him; that, when the president refused to permit the meetings to be continued in the office of the company, the meetings had the right to adjourn from Room 3 to Room 11, and conduct their

business in·the latter room.   To hold otherwise would be
recognizing in the president of the stockholders' meetings a
right to prevent the annual election of the directors of the
company, and a right to perpetuate in office, indefinitely, at
his pleasure, himself and the board of directors of which he
was chosen a member.   He has no such right under any rule
of law, or under any decision of the courts.   The statutes of
California vest in the stockholders the right to annually elect
a board of directors of said company.   This right cannot be
divested by any act of the directors themselves, much less
by the president.   (*Elkins* v. *Camden and Atlantic Railroad
Co.*, 36 N. J. Eq. 467.)

No elective officer has a right to do any act which would
prevent the election of his successor at the time fixed by law
for such election.   (*Curtis* v. *McCullough*, 3 Nev., *supra*.)
Further citation of authority in this connection need not be
made.

We find nothing in the opinion of the court in said case in
47 Pac. Rep. that supports the contention of counsel to the
effect that the president, M. W. Fox, was the sole judge, so
far as the stockholders' meetings were concerned, of the
validity of the issue of the stock, of the ownership of the
stock, and of the right of persons presenting or representing
it to vote the same.   In that opinion it is shown that a protest
was made in the meeting of stockholders by some member
or members against receiving certain votes representing cer-
tain stock, upon the ground that the persons in whose names
the stock stood on the books of the company were not *bona
fide* stockholders.   The chairman sustained the protest, and
the proffered votes were excluded at the election of the board
of directors.   No objection was taken at the meeting to the
ruling of the chairman on said protest, and his ruling must
be considered as the ruling of the meeting.   An election
of directors having been held, the aggrieved stockholders
brought their action under the provisions of section 315 of
the code.   Evidently their contention in that case was not
based on the ground that the votes were rejected by the
chairman, but upon the ground that they should not have
been rejected at all by any body.   The superior court cer-
tainly did not hold that the votes were illegally excluded

because they were rejected by the chairman, but because, in the opinion of that court, the persons in whose names the stock stood on the books were *bona fide* stockholders. And to our mind it clearly appears that the supreme court did not reverse the judgment of the superior court on the ground that the chairman had the right to exclude the votes, but on the ground that, in the opinion of the court, the persons in whose names the stock stood were not *bona fide* stockholders. The question as to the power of the chairman to determine the legality of stock, or the ownership of stock, or the right to vote it, is not discussed or considered in the opinion of the court. No other case is cited in support of this contention.

In *State ex rel. Martin* v. *Chute et al.*, 34 Minn. 135, there was involved the question of the right of the president of a corporation, or chairman of the stockholders' meeting, to determine the right to vote for directors of the company at the stockholders' meeting. The president had determined that certain stock offered should not be voted, and the chairman excluded the votes offered. The court said: "We find nothing in the charter or by-laws authorizing the president of the corporation or chairman of the meeting to determine such questions." "No other provision being made, it was for the meeting, by a vote of the stockholders, to determine, until revised by the courts, the right claimed." The court held that the opinion expressed by the president as to the right to vote the stock was of no more effect or binding force than would have been a similar opinion expressed by any stockholder, and that the person claiming the right to vote should have presented his claim to the meeting of stockholders. We find no statute of the state of California and no by-law of the company vesting in the president any such power as counsel claims for him.

*Adjourned Meetings:* Pursuant to the adjournment made from Room 3 to Room 11 on the 17th day of March, the stockholders met. G. W. Grayson presided at the meeting, and William Bowers acted as secretary. On the roll being called stockholders representing 86,307⅛ shares, as the same appeared on the books of the company, were present, and the meeting adjourned to meet on the 18th day of March,

at 1 o'clock P. M., at said Room 11. Pursuant to said last-named adjournment, the stockholders met at the time and place named. G. W. Grayson acted as chairman, and William Bowers as secretary, of the meeting. The chairman announced the adjourned meeting to be for the purpose of electing a board of directors of the Hale and Norcross Silver Mining Company for the then ensuing year. The roll of stockholders was called, and 88,311⅞ shares of stock were present, of which 60,937⅞ shares were represented by proxies, 20,949 in person, and 6,425 in stock. Thomas Cole, A. Herman, William Bowers, A. W. Moore, G. W. Grayson, F. S. Butler, and R. R. Grayson, all being stockholders, were placed in nomination for directors of said corporation, and elected by the unanimous votes representing the 88,311⅞ shares of stock. Of the said shares voted, certificates of stock representing 56,236 shares were present duly endorsed and voted by the holders thereof. This meeting, as well as all of the others named, was attended by a large number of stockholders, and the right of any person to vote, who answered the roll calls at the several meetings, as the representative of any stock in person, or by proxy, as the stock appeared on the books of the company, was not questioned by any other person claiming to be the owner of, or claiming the right to represent the same; and, so far as we have been able to find from the evidence, no such right was questioned by any stockholder, except the president, M. W. Fox, who represented 210 shares of his own stock, and Frank Mahon, who had 5 shares of his own.

*Legal Methods:* We are of opinion that the stockholders pursued legal methods in all of their said meetings, under the facts and circumstances disclosed by the evidence, that they regularly convened and regularly adjourned said meetings, and that they had the legal authority to transact any business at the adjourned meeting, held on the 18th day of March, that they might lawfully have transacted at the original meeting, held on the 10th day of March, in Room 3, had not the injunction been served, or that they might so have transacted in Room 3, at the meeting held on the 17th day March, after said injunction had been dissolved by the court,

and the court had ordered the election of directors to be held on that day at the office of the company.

"An adjourned meeting is but a continuation of the meeting which has been adjourned; and when that meeting was regularly called and convened and duly adjourned, the stockholders may, at the adjourned meeting, consider and transact any business that might lawfully have been transacted at the original meeting." (Cook on Stock, etc., 3d ed., sec. 601, and cases cited.)

*Provisions Concerning Elections:* With reference to stockholders' elections, counsel for relator cites sections 12 and 14 of article XII of the constitution of California, and several sections of the civil code. Said section 12 provides: " In all elections for directors or managers of corporations every stockholder shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors or managers to be elected." Said section 14 provides: " Every corporation, other than religious, educational or benevolent, organized or doing business in this state, shall have and maintain an office * * * where transfers of stock shall be made and in which shall be kept * * * books in which shall be recorded * * * the names of the owners of its stock and the amounts owned by them respectively." Of the sections of the code cited, section 307 provides: "All elections must be by ballot, and every stockholder shall have the right to vote in person or by proxy the number of shares standing in his name as provided in section three hundred and twelve of this code for as many persons as there are directors to be elected." Section 312 provides: "At all elections, or votes had for any purpose, there must be a majority of the subscribed capital stock, or of the members represented either in person or by proxy in writing. Every person acting therein, in person or by proxy or representative, must be a member thereof, or a *bona fide* stockholder, having stock in his own name on the books of the corporation at least ten days prior to the election. Any vote or election had other than in accordance with the provisions of this article is voidable at the instance of absent, or any, stockholders, or members, and may be set aside by petition to the district court of the county where the same is

held." * * * Section 315 provides: "Upon the application of any person, or body corporate, aggrieved by any election held by any corporate body, the district court of the district in which such election is held must proceed forthwith to hear the allegations and proofs of the parties, or otherwise inquire into matters of complaint, and thereupon confirm the election, order a new one, or direct such other relief in the premises as accords with right and justice."

*The Right to Vote:* Counsel for relator contends, in substance, that, under the above provisions of the constitution and code, every person, whose name appears upon the books of the corporation as a stockholder, must be allowed to vote by the stockholders' meetings at all elections, when present in person or by proxy in writing, and offering to vote, and that if there is a claim that such person is not the real owner of the stock which he has voted, or is not a *bona fide* stockholder, any party aggrieved by such vote must assert such claim and seek his remedy in the mode prescribed by section 315 of the code, and that he cannot do so otherwise. Counsel cites several authorities to support his contention.

Counsel for respondent argues that the sections of the code and cases cited by relator's counsel have no application to the case at bar, for the reason that a statute passed since the adoption of the code (Stats. 1880, 131) has special reference to mining corporations, while the code has reference only to other character of corporations, and that the statute has established a different rule with respect to the former class of corporations from that of the code, which has reference to corporations other than those organized for mining purposes. Of that statute, section 2 provides: "All stock in each and every mining corporation in this state shall stand in the books of the company in all cases in the names of the real owners of such stock, or in the name of the trustees of such real owners, but in every case where such stock shall stand in the name of a trustee, the party for whom he holds such stock in trust shall be designated upon the books and also in the body of the certificate of such stock."

It is admitted in this case that all of the capital stock of the Hale and Norcross Silver Mining Company, 112,000 shares, except about 2,800 shares, stood in the names of trus-

tees upon the books of the company, without the names of the persons for whom the parties were trustees being indicated in any manner, either upon the said books or upon the certificates of stock. Counsel further argues and contends that because the stock of said company stood as above named, and was not issued by the company as required by said statute, there was no valid election of directors as the successors of the board from which the respondent received his appointment as superintendent, and under which he claims the right to the office. We cannot agree with counsel in his conclusion.

The statute of 1880 does not declare the elections void in case the stock voted for directors does not stand on the books in the names of the real owners, or in case it stands in the names of trustees and the names of the real owners are not designated on the books and in the certificates. It does not provide any remedy to the aggrieved party in case a vote or election is had other than in accordance with the provisions of that act. Then, in case such vote or election is had, where must the aggrieved party look for a remedy? Counsel for respondent says, in effect, that when the president rejected the stock offered to be voted at the said meetings of the stockholders, if he was in error the remedy must be sought by an appeal to the courts under the provisions of section 315 of the code. But the remedy provided by that section is only available when a vote or an election has been had. He admits by his argument that section 315 is applicable to mining corporations to correct the rulings of the president, if any party is aggrieved thereby. We are of opinion that sections 312, 315, and other sections of the code, are also applicable to mining companies, and to elections held by them.

If we are correct in this opinion, what must be the correct conclusion as to the validity of the election had on the 18th day of March, 1897? Under section 312 a vote or election had other than in accordance with the provisions of law is not void, but voidable only at the instance of stockholders or members, and may be set aside only by petition to the district court of the county where the election is held, and by the supreme court on appeal, under other provisions of

the code. Until that election is declared to be void by the courts of the state of California, we must hold it to be valid.

A number of points and questions were raised and discussed by respective counsel which we do not think are necessary to be considered, under our view of the case. The affidavit of the relator being sufficient in averment, and the material averments being sustained by the proofs, we are of opinion, in consideration of the law applicable to this case, the facts and circumstances disclosed, and for the reasons above given, that the relator, Joseph R. Ryan, has the legal right to the position of superintendent of said company, and that he is unlawfully precluded from the enjoyment of such right by the respondent.

The writ of *mandamus* must issue as prayed for, and it is hereby so ordered.