[No. 1507.]

THE STATE OF NEVADA, ex rel. F. M. HUFFAKER, Petitioner, *v.* Colonel J. J. CROSBY, Colonel E. D. BOYLE, Lieutenant–Colonel J. A. CONBOIE, Lieutenant–Colonel J. H. KINKEAD, Major E. B. HARRIS, Captain W. C. MORRISON, Captain D. M. RYAN and Colonel F. C. LORD, Judge-Advocate, Composing and as a General Court-Martial of the Nevada National Guard under Special Orders No. 4, Adjutant-General's Office, Carson City, July 13, 1897, Defendants.

Constitutional Law—Court-Martial—Right of Accused to Counsel. The provisions of section 8 of article 1 of the state constitution, which provides among other things that, "in any trial in any court whatever, the party accused shall be allowed to appear and defend in person, and with counsel, as in civil cases," guarantees to a person prosecuted for an offense before a court-martial, organized under the laws of this state, the right to defend with counsel.

Attorneys-at-Law—Only Licensed Attorneys Authorized to Appear Before Court-Martial. The provisions of the act relative to attorneys and counselors-at-law (Gen. Stats. 2529, *et seq.*), which forbids, under penalty, any person to practice law in any court in this state, except justice's, recorder's or municipal courts, without having received a license as attorney or counselor, as required by said act, clearly limits the right of appearing as an attorney before courts-martial to those who have obtained the required license.

Idem—Power of Courts-Martial to Suspend for Contempt—Remedy. A court-martial, or any other court, other than the supreme court, has no power to suspend a licensed attorney in the exercise of his rights for any cause and for any length of time. If an attorney's previous conduct was contemptuous, our statutes provide an ample penalty for it, which a court-martial can avail itself of,

MANDAMUS—REMEDY TO ENFORCE RIGHT OF ATTORNEY TO APPEAR AS COUNSEL. *Mandamus* is the proper remedy, under the provisions of Gen. Stats. secs. 3469-3470, authorizing the issuance of the writ of mandate "by any court in this state, except a justice's, to any inferior tribunal * * * to compel the admission of a party to the use and enjoyment of a right * * * to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, * * * in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law," to enforce the right of a licensed attorney to appear for his client, who is being prosecuted for an offense before a court-martial.

ORIGINAL PROCEEDING. Application by the State, on the relation of F. M. Huffaker, for a writ of *mandamus* to compel Colonel J. J. Crosby and others, constituting a court-martial, to allow relator to appear as attorney for N. I. Morgan, charged with violating the articles of war. Writ issued.

The facts sufficiently appear in the opinion.

*F. M. Huffaker, in pro. per.*, for Petitioner:

I. Upon the allegations of the petition, *mandamus* is the proper remedy, under section 3469, General Statutes. Under this section a court-martial is included. It is also a court within the meaning of the state constitution.

II. Section 8 of article I declares: "No person shall be tried for a capital or other infamous crime (except in cases of impeachment, and in cases of the militia when in active service, and the land and naval forces in time of war, or which this state may keep in time of peace, with the consent of congress, and in cases of petit larceny, under the regulation of the legislature), except on presentment or indictment of a grand jury, and in any trial, in *any court whatever*, the party accused shall be allowed to appear and defend in person and with counsel in civil action." Under this provision a party has the right to select his own counsel; and for a court to refuse such counsel the right to appear and defend, would be to unlawfully deprive such counsel of a legal right, by virtue of his office as an attorney-at-law. A court-martial is a tribunal that must proceed according to the course of the common law. (3 Greenleaf Ev. sec. 469; Simmons on Court-Martial, 5th Ed., 304, 343, secs. 811, 913; McCourt on Court-Martial, 99; *In re Smith*, 10 Wend. 449.)

III. This question came before the Court of Appeals of

New York, where the clause of the New York constitution,—
of which ours is an identical copy—was construed by Church,
Ch. J., who says: "The question presented in this case is
whether a person prosecuted for an offense before a court-
martial, organized under the laws of this state, can demand,
as a constitutional right, that he be allowed to defend with
counsel, or whether this privilege is a matter of favor and
discretion." Then, after quoting this identical clause of the
constitution, continues: "The language of the provision in
question is very broad and comprehensive. No words in the
English language could have been selected of more general
or sweeping significance. 'In *any* trial *in any court* what-
ever,' is certainly comprehensive enough to embrace these
tribunals, unless we are prepared to say they are not courts
of any kind, or unless we can find that the language is
restricted or limited by the context or other provisions."
And concludes with: "Whatever the accused can say or do
in his defense, he may say or do by counsel. This will secure
the right without materially affecting the existing practice
in other respects. Nor does it detract from the force of this
clause that congress may exercise jurisdiction over the sub-
ject. It is sufficient that this court was organized under the
laws of the state, and is subject to the provision of the state
constitution." (*People, ex rel. Garling,* v. *Van Allen et al.,* 55
N. Y. 33, 35, 38, 41.)

IV. And so of this court-martial. It exists under and in
subordination to our state constitution, and cannot, under
section 11, article I, assume to disregard any of the provi-
sions thereof. Said section 11 says: "The military shall be
subordinate to the civil power." Under which the civil will
see to it that the military keep within the law, and abridge
not the privilege of any citizen. Says Blackstone: "The
necessity of order and discipline in our army is the only
thing which can give it countenance; and therefore it ought
not to be permitted in time of peace, when the king's courts
are open for all persons to receive justice according to the
law of the land." (1 Black. 413.)

V. The license issued by this court to petitioner says:
"As attorney and counselor in all the courts of this state."
As we have seen, a court-martial being a court of this state,

the writ of mandate should be made absolute, and defendant compelled to permit petitioner to defend Lieutenant Morgan, accused of "mutiny," before it, an offense affecting the character and liberty, aye! the life of the accused under the articles of war, under which the accusation is laid, which declare that any person found guilty of "mutiny" "shall suffer death, or such other punishment as a court-martial may direct." (U. S. Gen. Stats. sec. 1342, Articles of War, 22, 23.)

VI. This a criminal action, under the charges and specifications lodged against Lieutenant Morgan, in which case he is entitled to be represented by counsel, and no court can deprive him or his counsel of the right to be heard on the trial. (Gen. Stats. 3910.) This provision of our statute is in consonance with the constitution under which it was passed. The idea that a court-martial, in time of peace, is above the civil power, and a law unto itself, is absurd. This court-martial seems to claim the right to refuse to allow an attorney-at-law to defend an accused under the "laws and usages of war"; but, say the United States Supreme Court: "When peace prevails, and the authority of the government is undisputed, there is no difficulty in preserving the safeguards of liberty (p. 124); it can serve no useful purpose to inquire what those laws and usages are, whence they originated, where found, and on whom they operate; * * * they can have no application, where the courts are open and their process unobstructed." (*Ex parte Milligan*, 11 Wall. 121; *In re Bogart*, 2 Sawyer, 410.)

*James R. Judge*, Attorney-General and *F. P. Langan*, for Defendants:

I. Relator has undoubtedly mistaken his remedy. The office of a *mandamus* is to compel action, not to correct errors. When an act is once done, no informality or error will authorize it to be set aside or reviewed by such writ. (*State v. Wright*, 4 Nev. 123.)

II. A court-martial is a court within the meaning of the constitution. In this matter it appears that the court-martial has entered its order precluding relator from defending Morgan before it. The court-martial has acted, and, although

its order may have been erroneous, its determination, so far as this proceeding is concerned, is final, and cannot be reviewed on this writ. *Mandamus* does not lie to correct the conclusion of a court after it has acted. (*State v. Commrs. of Eureka County*, 8 Nev. 309; *Floral Springs M. Co.* v. *Rives*, 14 Nev. 431; *State* v. *Wright*, 4 Nev. 119; *People* v. *O. C. Pratt*, 28 Cal. 166.)

III.  *Mandamus* will not lie to compel vacation or setting aside of order made by inferior court or tribunal. (*State* v. *Morris*, 86 Tex. 226; *In re Parsons*, 150 U. S. 150; *Underwood* v. *Circuit Court*, 97 Mich. 626; *Felcher* v. *Breevort*, 97 Mich. 633; *Reynolds* v. *Crooks*, 95 Ala. 570.

IV.  It will be observed that the only case cited by relator, upon which he relies for the issuance of a peremptory writ of *mandamus* (*People* v. *Van Allen*, 55 N. Y. 33, 35, 38, 41) was a proceeding under a writ of *certiorari*. In that case, as in this, the court-martial refused the accused the right to counsel and proceeded to hear and did determine the case. The cases differ, however, in this:  That in the New York case counsel was excluded on the principle that the admission of counsel for the accused in military cases is not a right but a privilege only, whereas in this case specific objections were made to relator, the same being in the nature of charges, and said charges not being in any manner denied, the court-martial acted, and thereupon decided to exclude relator from defending accused (Morgan) on the ground and for the reason that the court-martial, or the members thereof, believed relator to have been guilty of disrespectful action towards the court. It appearing, therefore, that relator was objectionable to the court-martial—as that tribunal found—it had a right to exclude him from making a defense before it in behalf of Morgan. (Winthrop on Military Law, vol. 1, pp. 220, 221; Benet on Military Law, p. 94.)

By the Court, MASSEY, J.:

The petition recites that the relator is a regularly admitted and practicing attorney of this state; that on the 10th day of July, 1897, one N. I. Morgan, Second Lieutenant of Battery A, Nevada National Guard, was charged with violating the articles of war; that on the 13th day of July, 1897, the

defendants were detailed, by order, to constitute a general court-martial for the trial of such persons as might be brought before it; that on the 24th day of July, 1897, the said court-martial was organized, pursuant to said order, at Virginia City, Nevada, and selected Colonel J. J. Crosby as President thereof, and Colonel F. C. Lord as Judge-Advocate; that thereupon the said court-martial adjourned to the 17th day of August, 1897; that said Morgan was cited to appear before said court-martial for trial upon the charges preferred, and that on the last named date he did appear before said court-martial, with the petitioner, whom he had retained and employed to conduct his defense, prepared and ready for trial. Objection was made to the petitioner appearing and conducting said defense, and the court-martial sustained the objection, and refused the petitioner that right and privilege. Upon these facts, the petitioner asks the court to direct the said court-martial to vacate its order refusing petitioner such right, and to allow him to appear and make the defense.

The defendants interpose a demurrer to the petition and set up by answer affirmative matter to justify said order.

Section 8, article 1 of our constitution declares that " No person shall be tried for a capital or other infamous crime (except in cases of impeachment, and in cases of the militia when in active service, and the land and naval forces in time of war, or which this state may keep in time of peace, with the consent of congress, and in cases of petit larceny, under the regulation of the legislature), except on presentment or indictment of a grand jury, *and in any trial in any court whatever*, the party accused *shall be allowed to appear and defend in person, and with counsel, as in civil actions.*" \* \* \*

The Court of Appeals of New York, discussing the New York constitution, which was, in every respect, similar to the above provisions of our constitution, say: " The question presented in this case is whether a person prosecuted for an offense before a court-martial, organized under the laws of this state, can demand, as a constitutional right, that he be allowed to defend with counsel, or whether this privilege is a matter of favor and discretion. \* \* \* ' In any trial in any court whatever,' is certainly comprehensive enough to embrace these tribunals. \* \* \* Whatever the accused

can say or do in his defense, he may say or do by counsel."
(*People, ex rel. Garling*, v. *Van Allen et al.*, 55 N. Y. 33.)

The action was a proceeding in *certiorari* by the accused,
and is not cited for the purpose of determining the right of
the relator, in the case at bar, to the writ prayed for. The
court-martial, having been organized under our statute, and
Morgan, the accused, having been cited to appear before the
same for trial upon the charges preferred, the provision of
our constitution, and the authority above cited, gave him the
right to make such defense by counsel. The accused having
chosen and employed the relator to make such defense, the
question then to be determined is to what extent can the
court interfere with or abridge that right, and the rights of
the relator under his employment. Other provisions of our
law, than the one cited, must determine this question. Our
legislature, by the provisions of the act relative to attor-
neys and counselors-at-law, approved October 31, 1861, has
attempted to define the rights of the relator under his said
employment, and to prescribe his duties and liabilities there-
under. (Gen. Stats. sec. 2529, *et seq.*)

This statute forbids, under penalty, any person to prac-
tice law in *any* court in this state, except a justice's, record-
er's or municipal court, without having received a license as
attorney or counselor, as required by other provisions of the
act. (Gen. Stats. sec. 2537.)

The exception in this section clearly limits the right of
appearing as an attorney before courts-martial to those who
have obtained the required license. The relator was quali-
fied to act in this respect. The relator being qualified to act
as counsel for the accused before the court-martial, under
his employment, and not having been discharged, it is fur-
ther provided by the same act that a change of counsel
might be made in the action, at any time before final judg-
ment or determination, upon relator's own consent, filed
with the clerk, or entered upon the order of the court or
judge thereof, on application of the client. (Gen. Stats. sec.
2539.)

There is no pretense that any change of counsel was asked
by either the accused or the relator; but it is claimed by the
defendants, in justification of their conduct in refusing relator

the right to appear and defend the accused, that the allowance of counsel, in such cases, is a matter of 'courtesy, and that the court-martial has the power to exclude a person objectionable to it from appearing as counsel for the accused; that the relator was objectionable to the court-martial, and in contempt thereof, in that the relator had applied to the district court of the state in behalf of the accused for a writ of injunction to prevent the said court-martial from trying the accused upon the specified charges; that in the application for the writ of injunction, it was alleged that the citizens' committee for the celebration of the Fourth of July had issued invitations to the militia of Storey county to participate in said celebration; that it was also alleged in said application that the judge-advocate of said court-martial was detailed to sit in judgment upon his own charges contrary to law; that the relator, in his argument upon said application, sought to prejudice the court-martial and its officers in the eyes of the community wherein it had been convened; that the relator has also sought to have the order creating said court-martial revoked.

The contention that the allowance of counsel is a matter of courtesy is fully met by the provision of our constitution above cited. There is no court, within this state, possessing the power to deny this right. Whether or not the alleged conduct of relator was in contempt of the court-martial is not material, yet we suggest that very often proceedings are instituted before one tribunal questioning, and even denying, the authority and power of another tribunal.

Admitting that the alleged conduct of relator was in contempt of the court-martial, had it the power to suspend or interrupt him in the exercise of his rights as a licensed attorney for such contempt? We cannot so hold.

Section 14 of the act relating to attorneys, above cited, provides that an attorney may be removed or suspended by the supreme court, and by no other court, for cause, and the sections following prescribe the manner of proceeding, and the judgment upon conviction. (Gen. Stats. sec. 2542, *et seq.*)

No power or authority, so far as we have been able to find, is given to any other than the supreme court to suspend an attorney in the exercise of his rights for any cause and for

any length of time. He must be charged as prescribed by the statute, and, upon those charges, has the right of trial. If the alleged conduct of the relator was contemptuous, our statute provides an ample penalty for it, and the court-martial is given power and authority to as fully punish for such conduct, as the judges of the district courts have under the laws of this state. (Gen. Stats. sec. 670; sec. 3482, *et seq.*)

It is further contended that the relator has mistaken his remedy; that the court-martial being a court within the meaning of the constitution, and having made its order precluding the relator from defending the accused, its determination of that matter, although it may have been erroneous, is final, and cannot be reviewed in this proceeding. We cannot sustain this contention.

Our statute authorizes the issuance of the writ of mandate " by any court in this state, except a justice's, to any inferior tribunal,  *  *  *  to compel the admission of a party to the use and enjoyment of a right  *  *  *  to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal,"  *  *  *  in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. (Gen. Stats. secs. 3469, 3470; *State* v. *McCullough*, 3 Nev. 202; *State* v. *Cronan*, 23 Nev. 437.)

If Morgan, the accused, were complaining of the denial of his constitutional right to be defended by counsel, then *mandamus* would not be the proper proceeding; but the relator is not a party to the proceedings against Morgan, pending before the court-martial. He has no right to appeal therefrom, and, so far as we can see, no other remedy in the ordinary course of law. He is denied a right unlawfully—by a tribunal that has no authority whatever to act in the matter, and is without remedy, except by *mandamus*.

Counsel for defendants cites *State, ex rel. Treadway,* v. *Wright,* 4 Nev. 119, and *State, ex rel. Hitzel,* v. *Commissioners, etc.,* 8 Nev. 309, as supporting the last contention, but we do not think the cases can be so construed. In both cases, it appears that the inferior tribunals had determined matters which they were expressly authorized to determine; that they had acted upon matters clearly within their power and jurisdiction, while, in the case at bar, the court-martial

assumed to do what the law expressly says it shall not do, viz: suspend an attorney in the exercise of his rights as such.

For these reasons the writ of mandate will be issued as prayed for.