JAMES BONSALL MEARS, JR., ALSO KNOWN AS JIM SCOTT, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 5058

January 3, 1967                                422 P.2d 230

[Rehearing denied February 15, 1967]

*Robert R. Herz* and *Mack Fry,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Gene Barbagelata,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

This appeal is from a conviction of first degree murder and the sentence of death. On March 20, 1965, Mears entered a Safeway store in Sparks, Nevada, and walked to the window of the cashier's booth. He drew a pistol, pointed it at the clerk, and told her to "lay it all right there." The clerk turned and ran toward the manager's office. One shot was fired, narrowly missing her. Mears ran out of the entrance door. Outside the store, and while fleeing, Mears fired two shots toward the gathering crowd at the store entrance. The second shot struck Howard Hawthorne in the chest, fatally wounding him.

An off-duty Sparks policeman saw Mears run to a car and

throw himself onto the floor in the rear. A woman began driving the car from the parking area. The officer identified himself and ordered her to stop. She did so, the officer approached with revolver drawn, and ordered the occupants from the car. They slowly got out, but when the officer's attention was momentarily diverted, Mears jumped into the driver's seat and sped away. Although the officer fired several shots and attempted pursuit in his own car, Mears managed to elude him. The car was found a short time later, abandoned in an alley in downtown Sparks.

Officers of the Sparks police department were informed by the radio dispatcher of the assailant's suspected residence— Space 49 of the Dude Corral Trailer Park, Sparks. They went there and placed Mears under arrest as he came to the door in response to their request. The police searched the trailer and found a .25 caliber revolver which they seized. Mears was charged with murder. His defense was insanity. Nine errors are assigned. Three of them concern the lower court's denial of certain pretrial motions; the others relate to occurences during trial.

1.   Before trial the defendant sought to discover statements which he had made to law officers, statements of witnesses, photographs, and the results of scientific tests, if any. The discovery request was premised upon the demands of due process.

The United States Supreme Court has held that pretrial discovery of the accused's statements is not constitutionally compelled by the Fourteenth Amendment. Leland v. Oregon, 343 U.S. 790 (1952); Cicenia v. Legay, 357 U.S. 504 (1958). The court inferentially criticized the denial of discovery by noting that "it may be the better practice" to allow it. It seems that discovery at trial, coupled with a continuance if necessary, is probably adequate to meet constitutional requirements. Traynor, "Ground Lost and Found in Criminal Discovery," 39 N.Y.U.L.Rev. 228, 230 (1964).

Unlike California, where the writs of mandamus and prohibition have been employed to review orders granting or denying pretrial discovery (Jones v. Superior Court, 372 P.2d 919 (Cal. 1962); Powell v. Superior Court, 312 P.2d 698 (Cal. 1957), Nevada has refused that relief. Pinana v. District Court, 75 Nev. 74, 334 P.2d 843 (1959); Marshall v. District Court, 79 Nev. 280, 382 P.2d 214 (1963). Here, as in the federal courts, orders granting or denying discovery may be challenged

only on appeal from final judgment (Shelby v. District Court, 82 Nev. 204, 414 P.2d 942 (1966), dictum) and the appellate inquiry is whether the lower court abused its discretion in denying discovery before trial. We agree with the thought of the United States Supreme Court that pretrial discovery (at least, of the defendant's statements) is the better practice. Our view in this regard, however, does not resolve the issue now before us—whether the trial court was guilty of an abuse of discretion in denying the requested discovery before trial. We have concluded that an abuse of discretion does not appear from this record.

We so conclude because none of the defendant's statements was offered in evidence at the trial. We may not declare error and evaluate its significance when the evidence sought to be discovered before trial was not used during trial.

Neither may we find an abuse of discretion regarding the pretrial denial of the request to inspect and copy the statements of non-expert witnesses. If trial testimony was received from lay witnesses who had given statements before trial, the record does not disclose that fact. It is permissible for defense counsel, during trial, to question the witnesses on this point. If it develops that the testifier did record or write a pretrial statement or report, the defendant, upon request, has the right to hear or see it. Walker v. State, 78 Nev. 463, 376 P.2d 137 (1962); State v. Bachman, 41 Nev. 197, 168 P. 733 (1917). If time is required for study, a continuance of the trial may be necessary. For this reason, and others, it is sometimes the better practice to allow pretrial discovery of the statements of witnesses, rather than to incur the risk of future trial disruption and delay. In the instant case, defense counsel did not seek discovery during trial. They did not inquire if the testifier had given a statement before trial. We do not know whether such pretrial statements exist. There is no base from which to evaluate the trial court's exercise of discretion in denying discovery.

The scientific reports requested before trial were not offered in evidence by the state. These included reports of a blood-alcohol test, a barbiturate test, the autopsy, and a ballistics test. Before presenting the defense case, counsel moved for production of the blood-alcohol, barbiturate and ballistics tests. That motion was denied. The court reasoned that defense counsel could have subpoenaed those responsible for them.

Nevertheless, the prosecutor did show defense counsel the blood-alcohol and barbiturate reports. In these circumstances, the denial of pretrial examination may not be deemed prejudicial error.

Next, the defendant complains about the trial court's refusal to order the county to pay money for investigation expenses. Mears admitted the homicide. His defense was insanity. The lower court did allow $500 for a psychiatric examination, $250 for a neurological examination, and $100 for a psychological examination. Thus, money for investigation, information and testimony relevant to the sole defense of insanity was provided. It is not suggested that these allowances were inadequate. In this context, the failure to allow an additional sum for general investigation purposes was not an abuse of discretion.

Shortly before trial the accused asked for a continuance. He claimed that newspaper publicity concerning the statewide "soft on crime" controversy, and stories about other notorious criminal cases, created an unfavorable climate for his trial. None of the publicity concerned his case. Absent a substantial nexus between the publicity and the case at bar, we cannot find an abuse of discretion in denying a continuance. Cf. Hanley v. State, 80 Nev. 248, 391 P.2d 865 (1964).

2. In rebuttal the state offered psychiatric opinion testimony to controvert the opinion evidence given by the defense to establish insanity. In relating the personal background and history of the defendant, the state's psychiatrist mentioned prior criminal offenses which the defendant had committed. The judge struck that reference in the testimony of one of the psychiatrists, told the jury to disregard it, and denied a defense motion for mistrial. The testimony of the other psychiatrist— "Also with this he has had sociopathis, antisocial traits, in which he has committed a number—quite a number of offenses."—was allowed to remain in the record over objection. This is assigned as prejudicial error.

It is true, as the appellant suggests, that Nevada follows the rule of exclusion concerning evidence of other offenses. We exclude such evidence unless relevant to prove the commission of the crime charged. Tucker v. State, 82 Nev. 127, 412 P.2d 970 (1966), and the many Nevada cases therein cited. That rule, however, does not touch the issue here presented. We are not concerned in this case with proving the commission of the

homicide. It is admitted that the defendant killed Hawthorne. He sought to escape legal responsibility for the homicide because of insanity. When that defense is interposed, any words or conduct shedding light on that issue are admissible, even though they disclose other criminal acts of the defendant. Brothers v. State, 183 So. 433 (Ala. 1938); Grammer v. State, 196 So. 268 (Ala. 1940); Vol. 2, Wigmore, Evidence § 228 (3d ed. 1940).

Subordinately it is contended that the court should have given a limiting instruction that the jury should not regard the testimony as evidence of the truth of the defendant's statements so related by the psychiatrist. This contention rests upon the California decisions of In re Spencer, 406 P.2d 33 (Cal. 1965) and People v. Nicolaus, 409 P.2d 193 (Cal. 1966) and, we think, is sound.[1]

As we have indicated, the defendant's disclosure of other crimes is relevant to his mental condition, and is essential information to the formulation of a reliable expert opinion. It is also apparent that such information carries prejudice, for should the jury find against the defense of insanity, its awareness of the past criminal activity of the accused may weigh heavily in fixing penalty. For this reason the jury should be instructed that the purpose is to show the information upon which the expert opinion is based, and is not to be considered as proof that such other offenses were committed. That instruction was not given in this case, apparently because it was not requested.

NRS 175.515,[2] which we considered in Harvey v. State, 78 Nev. 417, 375 P.2d 225 (1962) and Graves v. State, 82 Nev. 137, 413 P.2d 503 (1966), applies to written charges which have been requested and given, or refused, or to charges given by the court on its own motion. In such event, counsel need not object to the given instruction, or except to the failure to

[1] The California cases dealt with incriminating statements made by the defendant to the psychiatrist, in the absence of counsel, and concerning the crime for which he was on trial. The rationale, however, has equal application to statements about other offenses.

[2] NRS 175.515 reads: "When any written charge has been requested and given, or refused, or given by the court of its own motion, the question or questions contained in such charge need not be excepted to, but the written charge, given or refused, with the endorsements showing the action of the court, shall form part of the record, and any error in the decision of the court thereon may be taken advantage of on appeal in like manner as if presented in a bill of exceptions."

give a requested instruction, in order to preserve the point for appellate review. The statute does not, however, relieve counsel of the duty to request that a desired instruction be given. The failure to so request normally waives the right to complain on appeal, unless the instruction is so necessary to the case that the court, *sua sponte,* must be sure that it is given. In our view the limiting instruction we have been discussing need not be given unless requested by counsel. Since the request was not made he may not now complain.[3]

Complaint is made that the defendant was without counsel when examined by a psychiatrist who testified for the state. Since the record does not establish this fact we will not consider the point.

3. The remaining assignments of error may be resolved rather quickly. (a) We are once more asked to repudiate the M'Naghten test of insanity and subsitute another. In Bean v. State, 81 Nev. 25, 36, 398 P.2d 251, 257 (1965), we wrote: "Though aware that the standard is the subject of an extensive assault by medical authority, we are not yet persuaded that either medical science or the law has fashioned a preferable guide for trial purposes." Perhaps future developments will cause us to change our view. At this date, however, we adhere to the expression in Bean v. State, supra.

(b) The trial court, over objection, allowed the state to introduce in evidence the .25 caliber revolver which the police officer found in the defendant's trailer when they arrested him. The contention is that the arrest of Mears was without probable cause and, consequently, illegal. Therefore, the seizure of the gun cannot be sanctioned on the theory that it occurred incident to a lawful arrest.

The predicate for the contention that the arrest was without probable cause is that the arresting officer had gone to the trailer pursuant to a police radio broadcast, and the record does not show what information that radio communication gave the arresting officer. The arresting officer was not alone. He was accompanied by the officer who had originally attempted to take Mears into custody, and from whom Mears

---

[3]Had the instruction been requested and refused, we would be called upon to decide whether the error was harmless or prejudicial. NRS 169.110.

had temporarily escaped. The composite knowledge of the officers at the arrest scene established probable cause for arrest. Miller v. United States, 356 F.2d 63 (5 Cir. 1966); State v. Fioravanti, 215 A.2d 16 (N.J. 1965). The seizure of the gun was incident to a lawful arrest.

(c) During his closing summation to the jury the prosecutor made a comment carrying emotional appeal.[4] Defense counsel did not object. The comment was not appropriate and should not have been made. However, the absence of objection and our review of the record cause us to conclude that the substantial rights of the accused were not affected by the prosecutor's remark. Kuk v. State, 80 Nev. 291, 392 P.2d 630 (1964); Dotson v. State, 80 Nev. 42, 389 P.2d 77 (1964).

(d) Finally it is suggested that prejudicial error occurred when the trial court refused to allow a challenge for cause to one of the jurors who was later excused by peremptory challenge. The defendant used all of his peremptory challenges. We need not pass upon whether the court ruled correctly in denying the challenge for cause, since the objectionable juror was later excused peremptorily (cf. People v. Wilkes, 284 P.2d 481 (Cal. 1955)) and the record does not show that there still remained on the jury a juror whom the defendant had unsuccessfully attempted to challenge for cause. Cf. State v. Raymond, 11 Nev. 98 (1876); Bryant v. State, 72 Nev. 330, 305 P.2d 360 (1956).

The defendant is an indigent and has been represented throughout by court-appointed counsel. We commend them for their diligent service. The lower court is directed to give them the certificate specified in subsection 4 of NRS 7.260 in order that they be compensated for services on appeal.

Affirmed.

COLLINS and ZENOFF, JJ., concur.

---

[4]The statement: "There is no humor in this case. A man lies dead. A little girl is fatherless, and a woman is without her husband because of the selfish acts, the inconsiderate, selfish acts of this defendant. There was a little girl here that will not be able to hear her daddy say, 'Merry Christmas' this year, or any year in the future because of the inconsiderate, selfish act of this defendant. By your verdict you can denounce this conduct. There is only one verdict, ladies and gentlemen, that you can return that will insure that another woman will not be made a widow, that another little girl will not have to go through life without the loving arms of her father."