ROBERT A. MAHEU, INDIVIDUALLY AND DOING BUSINESS AS ROBERT A. MAHEU ASSOCIATES, PETITIONER, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, DEPT. NO. 6, AND THE HON-ORABLE HOWARD W. BABCOCK, JUDGE THEREOF, RESPONDENT.

No. 6663

January 28, 1972                    493 P.2d 709

[Rehearing denied March 14, 1972]

*Morton Galane,* of Las Vegas, for Petitioner.

*Davis & Cox,* of New York City; *Morse, Foley and Wadsworth,* of Las Vegas, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

In these original proceedings, Robert A. Maheu seeks certain extraordinary writs directed to the respondent court, in which litigation is pending that involves Maheu, Hughes Tool Company ("HTCo"), Howard R. Hughes (HTCo's sole shareholder), and others. Specifically, Maheu requests these writs:

(1) prohibition arresting proceedings on a "Motion for a Stay and for an Extension of Time," filed by HTCo;

(2) mandamus commanding respondent to vacate an ex parte order that purports to stay the deposition of HTCo by its managing agent, Howard R. Hughes;

(3) mandamus commanding respondent to furnish Maheu opportunity "to file and have entertained a motion for the imposition of a conditional sanction to ensure the appearance of Howard R. Hughes for the taking of his deposition"; and

(4) mandamus commanding respondent to vacate that provision of an "Order Sealing Exhibit" which curtails disclosure of the contents of certain documents.

Of these requests, we grant the first two for reasons stated in this Opinion. With those matters determined by us, we are confident respondent will promptly consider and decide any motion for a conditional sanction Maheu may address to it; thus, we believe Maheu will now have a plain, speedy and adequate remedy concerning the matter involved in his third request; therefore we deny it, without prejudice. While Maheu's counsel may have acquiesced in the court's entry of an order precluding disclosure of his exhibit, we have no doubt that, subject to appropriate safeguards, Maheu's counsel is nonetheless entitled to copies thereof to prepare his case, and during deposition should be allowed to examine Hughes on the original documents. However, again, we are confident the court will now allow such access upon proper application; thus Maheu's fourth request for relief is also denied, without prejudice.

A complaint is pending in the respondent court by Robert A. Maheu, plaintiff, against Chester C. Davis, Frank William Gay, and C. J. Collier, Jr., as defendants, claiming damages for wrongful interference with Maheu's alleged right to control

certain business properties. Another complaint is pending in the name of HTCo, as plaintiff, seeking an injunction and damages against Maheu, as defendant, for wrongful refusal to surrender control of business properties and records. In addition to pleading defenses to HTCo's complaint, Maheu has stated a counterclaim against Hughes and HTCo.

On December 12, 1970, while conducting combined hearings on motions for preliminary injunction filed by Maheu and HTCo, the court entered an "Order Sealing Exhibit," providing that a documentary exhibit offered by Maheu be sealed in an envelope, which should not be reopened except on application to the court, and that Maheu was prohibited from making "any further disclosure, dissemination or other use of" the exhibit.

On December 24, 1970, the court entered a preliminary injunction from which Maheu has taken an appeal, the merits of which are not before us. The injunction contains provisions requiring Maheu to "return" records, with which Maheu claims to have complied to the extent he understands the obligations created thereby.[1]

On December 31, 1970, Maheu served HTCo's counsel with notice under NRCP 26(a), advising them he would take the deposition of HTCo, by its managing agent, Howard R. Hughes, at 10:00 a.m., January 11, 1971, at the office of Maheu's attorney. No one appeared pursuant to the notice. Instead, at 10:33 a.m. on January 11, HTCo's counsel filed a paper styled "Motion to Vacate Notice to Take Deposition," asserting that (1) the discovery sought was "premature," (2) the discovery was "not in conformity with applicable provisions of the Nevada Rules of Civil Procedure nor with other applicable rules of law," and (3) HTCo "may not be compelled to produce Howard R. Hughes as its managing agent." The same day, at 10:35 a.m., HTCo's counsel procured an ex parte order, purporting to stay the deposition "until further order of the court following hearing and determination of said Motion." The motion was never heard.

On January 11, Maheu applied for an order directing the

---

[1]Among other things, the preliminary injunction provides:

"IT IS FURTHER ORDERED that defendants, their respective agents, servants, employees and attorneys, and all persons in active concert and participation with any of them, shall forthwith return or cause the return to plaintiff of all books, documents, records and communications of plaintiff or pertaining directly or indirectly to the business operations or affairs of plaintiff, including all copies or other reproductions [sic] of same, and all other property belonging to plaintiff, as may be in the possession, custody or control of defendants directly or indirectly."

amount of the supersedeas bond to be posted by him to obtain a stay of the preliminary injunction pending his appeal. January 14, the court denied this application.

On January 19, at 5:14 p.m., counsel purporting to act only for HTCo filed the "Motion for a Stay and for an Extension of Time" that is the subject of Maheu's application for a writ of prohibition. This "motion" asked the court: (1) "for a stay of all actions, proceedings, processes and other activities by or on behalf of Robert A. Maheu . . . other than for compliance with the prior orders of this court dated December 12 and 24, 1970, relating to certain documents and other property to be returned to HTCO, until MAHEU has fully complied with and satisfied the Court as to his compliance with said prior orders of this court"; and (2) for an extension of time for "any party" to move, answer or otherwise respond to pleadings until after Maheu "shall have fully complied and satisfied the court as to his compliance with said prior orders of this Court."[2] By ex parte order filed at 5:19 p.m., the court extended the time of "any party" to plead, as requested by the "motion," and "stayed" depositions of Frank W. Gay and Chester C. Davis (respectively noticed by Maheu for January 25 and February 1) until "further order of this Court following hearing and determination of the Motion to Stay."

On February 5, Maheu served another notice to depose Hughes, and moved the court to vacate its ex parte "stay" order of January 11. March 3, the court denied Maheu's motion "without prejudice."

April 1, the court conducted a conference to schedule the order in which pending matters would be heard. The court decided, over protests by Maheu's counsel, that it would not consider any other matters until such time as it had heard and

---

[2]The grounds for this "Motion for Stay" were:

"1. MAHEU has failed and refused to comply with the prior orders of this Court;

"2. substantial rights of HTCO in the above cases are materially and adversely affected so long as MAHEU fails to comply with the prior orders of this Court relating to the return of documents and property belonging to HTCO;

"3. MAHEU is not entitled to the use or protection of the rules, procedures or processes of this Court in connection with the above cases so long as he is defying the prior orders of this Court; and

"4. the conduct of MAHEU is contumacious and tends to make a mockery of the rules, procedures and orders of this Court. It is not only inequitable but prejudicial to HTCO to require the parties involved in the above cases to proceed with the litigation of the issues raised by MAHEU so long as MAHEU fails and refuses to comply with the outstanding orders of this Court."

determined HTCo's "Motion for a Stay and for an Extension of Time." Thereafter, the court held hearings at which it permitted HTCo's counsel to call numerous persons to interrogate them concerning the nature and quantity of records removed from premises of HTCo, where Maheu and his company had conducted business (including managerial services for HTCo) until HTCo undertook to terminate its relationship with Maheu. These proceedings continued from time to time until June 12, when our court stayed them to consider the petition now before us.

I.

Under NRS 34.320, the writ of prohibition "arrests the proceedings of any tribunal, corporation, board or person exercising judicial functions, when such proceedings are without or in excess of jurisdiction." As a corollary, prohibition will arrest proceedings in aid of an order that is not binding on the petitioner. See: State ex rel. Friedman v. Dist. Ct., 81 Nev. 131, 399 P.2d 632 (1965), and Culinary Workers v. Court, 66 Nev. 166, 207 P.2d 990 (1949), both granting prohibition against proceedings in aid of a restraining order improperly issued without a bond. Thus, if the injunction's provisions requiring Maheu to "return" records failed for any reason to bind him, then prohibition lies against proceedings instituted to enforce those provisions.

Maheu contends that proceedings predicated upon mandatory provisions of the preliminary injunction are therefore in excess of the district court's jurisdiction because although he appealed, posted a proper appeal bond, and moved for an order fixing the supersedeas bond necessary to obtain a stay during appeal, the district court unlawfully denied his motion. If the injunction's mandatory provisions are deemed to "direct the assignment or delivery of documents or personal property" within the meaning of NRCP 73(d)(2), Maheu urges, then under that rule he had an absolute right to enter a bond "[i]n lieu of assignment and delivery." However, if NRCP 73(d) does not require a supersedeas bond, Maheu argues, his appeal itself effected an automatic stay, because NRCP 73(d)(4) states "[i]n cases not provided for . . . the giving of an appeal bond . . . shall stay proceedings in the court below upon the judgment or order appealed from." As Maheu in fact sought to have the court fix the supersedeas required of him, we may assume the case is governed by NRCP 73(d)(2).

The pertinent part of that rule was derived from Section 407 of our 1911 Civil Practice Act, and is in substantially the same

form today as when this court decided State ex rel. Pacific Reclamation Co. v. Ducker, 35 Nev. 214, 127 P. 990 (1912). There we said: "On an appeal from a mandatory injunction requiring defendants to deliver property to plaintiffs, as in this case, an appeal from the order entitled the defendants, as a matter of right, upon the filing of a proper stay bond, to a stay of proceedings under the injunction. In such a case, the fixing of the amount of the stay bond is not a matter of discretion with the trial court." 35 Nev., at 227; 127 P., at 994; accord, Dodge Bros. v. General Petroleum Corp., 54 Nev. 245, 10 P.2d 341 (1932). We can hardly depart from our prior rulings, for they not only appear correct, but have been part of our practice for more than half a century; the statute they interpreted was re-adopted by our legislature as part of our 1937 new trials and appeals act (Stat. of Nev. 1937, ch. 32, p. 53, at p. 59); this court itself adopted those provisions without material change, upon recommendation of our Advisory Committee, when we promulgated NRCP; and our prior decisions, as well as our decision today, are in accord with those in California, upon whose code our practice is based.[3]

It should be noticed that the cases we have cited involved proceedings contemplating punishment for contempt; whereas, HTCo's motion asked "a stay of all actions, proceedings, processes and other activities by or on behalf of Maheu." If anything, this difference only renders proceedings on HTCo's motion more dubious; for where a tribunal has refused to let counsel proceed because it deemed him in contempt, this court has granted mandamus, saying: "If the alleged conduct of the relator was contemptuous, our statute provides ample penalty for it." Cf. State ex rel. Huffaker v. Crosby, 24 Nev. 115, 123, 50 P. 127, 128 (1897). Thus, proceedings on HTCo's "Motion for a Stay and for an Extension of Time" are patently in excess of jurisdiction, and as to all such proceedings a writ of prohibition must issue.[4]

---

[3]In Clute v. Superior Court, 99 P. 362 (Cal. 1908), the Supreme Court of California arrested proceedings to enforce a preliminary injunction directing the manager of a corporation to return books and property where, although the petitioner has not posted a supersedeas bond, "he had requested the court below to fix the amount of an undertaking to stay proceedings." Id., at 364. See also: Kettenhofen v. Superior Court, 358 P.2d 684 (Cal. 1961); Schwarz v. Superior Court, 43 P. 580 (Cal. 1896); Dewey v. Superior Court, 22 P. 333 (Cal. 1889).

[4]Accordingly, while Maheu has raised other forceful arguments to support the writ's issuance, it is unnecessary to decide them.

If the proceedings be considered as discovery into Maheu's defenses

The respondent court having extended the time for any party to move, answer or otherwise respond to pleadings in the causes before it, until five days after determination of HTCo's Motion for Stay; and proceedings on that motion now being terminated; any party under obligation to move, answer, or otherwise respond to pleadings in the causes before the respondent court shall do so, within five days after entry of our Notice in Lieu of Remittitur.

## II.

Under NRS 34.160, mandamus lies "to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded." Through NRCP 26(a), this court has declared the right of any party to take the testimony "of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes." Maheu contends respondent unlawfully precluded his rights under NRCP 26(a) when, without motions for protective orders "seasonably made by any party or by the person to be examined and upon notice and for good cause shown," as required by NRCP 30(b), respondent first entered ex parte orders "staying" depositions noticed by Maheu, thereafter denied Maheu's motion to vacate the order that "stayed" the deposition of HTCo through Hughes, and then declined to consider any matter except HTCo's "Motion to Stay" pending its determination.

and counterclaim, as counsel for HTCo sometimes appears to suggest, the court is equally without jurisdiction to entertain them; for they clearly are contrary to numerous provisions of the practice we have promulgated, e.g. NRCP 30(a)(b)(c)(e). It would be strange indeed were we to hold that respondents could allow HTCo to conduct its discovery in court, without the slightest compliance with our rules, while denying Maheu all right to proceed with discovery outside of court, in compliance with those rules.

Again, HTCo's motion cannot be considered as one for a protective order, in part for reasons indicated in Point II of this Opinion.

Rasbury v. Bainum, 387 P.2d 239 (Utah 1963), upon which HTCo principally relies in justification of the proceedings, has little or nothing in common with the case at hand. There, the court entered a pre-trial order, the propriety and binding character of which plaintiff did not question, requiring him to produce books and records for trial. The plaintiff failed to produce them, offering no excuse except the suggestion that "possibly" they had been stolen from his office. The court held this excuse "not worthy of consideration" and dismissed his cause of action; the appellate court affirmed.

▄▄▄▄▄▄▄

For a century, our settled law has been that any "special" motion involving judicial discretion that affects the rights of another, as contrasted to motions "of course," must be made on notice even where no rule expressly requires notice to obtain the particular order sought, except only when this requirement is altered to meet extraordinary situations such as those concerned in NRCP 65(b). Pratt v. Rice, 7 Nev. 123 (1871); NRCP 6(d). It is also fundamental that although an order's subject matter would lie within the court's jurisdiction if properly applied for, it is void if entered without required notice. Our authorities establishing this principle are as old as Wilde v. Wilde, 2 Nev. 306 (1866), and as recent as Reno Raceway, Inc. v. Sierra Paving, Inc., 87 Nev. 619, 492 P.2d 127 (1971). It makes no difference that a void order may concern a matter committed to the court's discretion, such as "discovery," regarding which the court might have granted protective orders had a proper application been made. Cf. Checker, Inc. v. Public Serv. Commn., 84 Nev. 623, 446 P.2d 981 (1968); cf. Ray v. Stecher, 79 Nev. 304, 383 P.2d 372 (1963); cf. Whitney v. District Court, 68 Nev. 176, 227 P.2d 960 (1951); cf. Abell v. District Court, 58 Nev. 89, 71 P.2d 111 (1937).

State ex rel. Jurich v. McFadden, 43 Nev. 140, 182 P. 745 (1919), is particularly noteworthy in view of suggestions that various acts of the district court are to be justified as "housekeeping" matters. In *McFadden,* this court recognized that when a district court undertook to change a trial date without a motion properly before it on notice, as required by a general rule of practice like NRCP 6(d), extraordinary relief by certiorari was available from this court. There, we said: "Attempt is made to maintain the action of the court upon the ground that courts have inherent power to regulate their own docket and control their own business. This position is not tenable in face of the explicit and unconditional direction of the statute and said rule of court." 43 Nev., at 147.

▄▄▄▄▄▄▄

The authorities cited leave no doubt that orders void for want of notice may be reviewed by certiorari, although we have sometimes refused to issue the writ where it appears the district court, on application, might vacate the offending order. Here, although Maheu's counsel afforded the court an opportunity to correct its own error, it refused to do so and continued to preclude Maheu's right. Mandamus lies to gain admission to a precluded right to proceed. Cf. Swisco, Inc. v. District Court,

79 Nev. 414, 385 P.2d 772 (1963); cf. LaGue v. District Court, 68 Nev. 131, 227 P.2d 436 (1951); cf. Roberts v. District Court, 43 Nev. 332, 185 P. 1067 (1920); cf. State ex rel. Howe v. Moran, 37 Nev. 404, 142 P. 534 (1914); cf. Floyd v. District Court, 36 Nev. 349, 135 P. 922 (1913).

It is no answer to say the court has not denied, but has merely postponed, Maheu's right to take desired depositions; for with exceptions not applicable here, NRCP 26(a) expressly grants the right to depose witnesses "without leave of court." The right to prepare one's case in this manner is continuing and ever present, subject to discretionary control by the court only in conformity with NRCP.

Since the court's ex parte orders "staying" depositions were entered without any jurisdiction we can perceive, either under NRCP 30(b) or otherwise, and since we believe such a jurisdictional deficiency does not become a calendar problem merely because problems concerning it have been interjected into the court's calendar, it is our order that a writ of mandamus issue commanding the lower court to vacate its order of January 11 staying the deposition of HTCo through Hughes.[5]

The view we take of this matter makes it unnecessary to consider the extent to which this court may, by extraordinary writ, review merely erroneous or arbitrary orders of a district court that decide some properly presented issue concerning "discovery."

BATJER and THOMPSON, JJ., concur.

ZENOFF, C. J., concurring:

I concur with the result reached by the majority that the extraordinary writs must issue, but in particular, base my concurrence that mandamus lies to compel the discovery right to depose Howard R. Hughes on the following rationale.

---

[5]It is arguable that when a court is without time to hear a proper motion for a protective order, it may postpone the deposition until the motion can be heard. Cf. Pioche Mines Consolidated, Inc. v. Dolman, 333 F.2d 257, 269 (9th Cir. 1964). Here, however, the court's ex parte "stay" order cannot thus be justified; for assuming, out of favor to HTCo, that its "Motion to Vacate Notice to Take Deposition" can be considered a motion for a protective order, it was neither "seasonably made" nor made "upon good cause shown." See: Millholland v. Oglesby, 155 S.E.2d 672 (Ga.App. 1967); Wieneke v. Chalmers, 385 P.2d 65 (N.M. 1963); Stevens v. Sioux City and New Orleans Barge Lines, Inc., 30 F. R. D. 397 (W.D. Mo., W.D. 1962); Loosley v. Stone, 15 F. R. D. 373 (S.D. Ill., N.D. 1954); Dictograph Products v. Kentworth Corporation, 7 F. R. D. 543 (W.D. Ky. 1947).

Our discovery rules are patterned on the Federal Rules of Civil Procedure.

I.    On January 11, 1971 Judge Babcock stayed the taking of the deposition of Hughes Tool Company noticed for January 11, 1971 until further order of the court. The motion on which the stay was predicated set forth the grounds, in addition to testimony and evidence theretofore received, to be:

"1.    The discovery sought is premature.

"2.    The discovery sought is not in conformity with applicable provisions of the Nevada Rules of Civil Procedure nor with other applicable rules of law.

"3.    Hughes Tool Company may not be compelled to produce Howard R. Hughes for deposition as its managing agent."

Upon motion for a stay and for an extension of time, on January 19, 1971, Judge Babcock stayed all proceedings including the taking of Howard Hughes' deposition until he would conduct a hearing on whether or not Maheu had complied with the court's previous order to return all papers that Maheu had taken from Hughes Tool Company and Hughes Nevada Operations. The judge's position is that the court has the inherent power to see to it that its orders are complied with. I maintain he was in excess of his jurisdiction and that it was not mere error, that (1) the order to turn over all papers was stayed by the stay bond request, (2) he has rules relating to contempt to enforce his orders, if valid, (3) that the Hughes people have the right according to rules provided to amend their pleadings at any time that new information is discovered (NRCP Rule 15, Amended & Supplemental Pleadings), thus, their claim that they cannot proceed to file an answer to the counterclaim because, allegedly, Maheu had some of their papers, is without merit, and (4) that they have the benefit of protective orders provided in the rules on the taking of depositions and none of those protective orders includes a stay order of all proceedings such as Judge Babcock imposed.

II.    Mandamus is appropriate.

My first assignment of error has been treated by the majority. As the second and third are self-explanatory, I will discuss more fully the fourth.

A.    Rule 30 of the Nevada Rules of Civil Procedure grants the right after commencement of the action for any party to take the testimony of any person, including a party, by deposition upon oral examination. When this right is denied or infringed upon without lawful authority interlocutory review may be had by use of an extraordinary writ, in this instance the writ of mandate. Texaco, Inc. v. Borda, 383 F.2d 607 (3rd Cir. 1967). NRS 34.160 provides in pertinent part:

"The writ may be issued by the supreme court . . . to compel the admission of a party to the use and enjoyment of a *right* or office to which he is entitled and from which he is *unlawfully* precluded by such inferior tribunal, . . . [Emphasis supplied.]."

There is the further requirement of NRS 34.170 that:

"This writ shall be issued in all cases where there is not plain, speedy and adequate remedy in the ordinary course of law. It shall be issued upon affidavit, on the application of the party beneficially interested."

In Harabedian v. Superior Court, County of Los Angeles, 195 Cal.App.2d 26, 15 Cal.Rptr. 420, 422 (1961), it was held that a writ of mandamus may issue not only to enforce a proper discovery right (Dowell v. Superior Court, 47 Cal.2d 483, 304 P.2d 1009 (1956); Powell v. Superior Court, 48 Cal.2d 704, 312 P.2d 698 (1957); Walker v. Superior Court, 155 Cal.App.2d 134, 317 P.2d 130 (1957); Jorgensen v. Superior Court, 163 Cal.App.2d 513, 329 P.2d 550 (1958)), but also to prevent improper discovery proceedings including physical examinations. Sharff v. Superior Court, 44 Cal.2d 508, 282 P.2d 896, 64 A.L.R.2d 494 (1955); Gonzi v. Superior Court, 51 Cal.2d 586, 335 P.2d 97 (1959).

Statutes relating to discovery procedures should be liberally construed in favor of disclosure. Harabedian, supra; Hauk v. Superior Court of Los Angeles County, 38 Cal.Rptr. 345, 391 P.2d 825 (1964).

Chief Judge Lumbard in Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 614 (1964), said:

"We think it clear beyond any question, in light of all the circumstances here presented, that the deposition of Hughes was necessary to all aspects of this litigation, and his willful and deliberate default constituted a sufficient basis under Rule 37 for the dismissal of the counterclaims with prejudice. Hughes has at all times been the sole owner of Toolco and the guiding light behind all the transactions between Toolco and TWA. Both TWA and the additional defendants had the right to depose Hughes."

For the purposes of this litigation, I subscribe to those views.

The notice on December 31, 1970 to Hughes Tool Company and Howard R. Hughes was proper and in conformance with the Nevada Rules of Civil Procedure. NRCP 30(c); Deros v. Stern, 87 Nev. 148, 483 P.2d 648 (1971). Therefore, it is clear that there is a right under the Nevada discovery rules to take the deposition, that this right has been infringed upon, and per the mandamus statute, the writ of mandate will lie to compel the enjoyment of the right to which Maheu is entitled.

B.   An appeal is not an adequate remedy in this instance. As a condition precedent to mandamus, NRS 34.170 requires that there be no plain, speedy and adequate remedy in law.

In Annot., Availability of mandamus or prohibition to compel or to prevent discovery proceedings, 95 A.L.R.2d 1229, 1237 (1964), it is stated:

"In accordance with the general principle that the availability of other legal remedies does not preclude proceedings in prohibition where such other remedies are not adequate, it was held in the following cases that a writ of prohibition to review the granting of a discovery order was available to the aggrieved party on the ground that the remedy by appeal from the final judgment of the action wherein discovery was granted was inadequate. [California and Arizona cases then are cited.]"

In McClatchy Newspapers v. Superior Court of Sacramento County, 26 Cal.2d 386, 159 P.2d 944, 948 (1945), the California Supreme Court, in considering an interlocutory review of pretrial discovery proceedings, stated, "[m]andamus is the appropriate remedy to secure the enforcement of a litigant's statutory right to take depositions, and an appeal from a final judgment is neither speedy nor adequate where a trial court improperly refuses to order that a deposition be taken [citations omitted]."

The Arizona Court of Appeals had occasion in Phelps Dodge Corp. v. Superior Court, 7 Ariz.App. 277, 438 P.2d 424 (1968), to consider a writ of certiorari seeking review of pretrial discovery order entered in a civil action. The court stated, at 427, "[w]e agree with California that appeal is not an adequate remedy for denial of discovery because a litigant has a right to: '. . . the means of obtaining in advance of the trial information concerning the issues and the means of producing at the trial the evidence necessary to sustain his action or defense.' McClatchy, [supra,] 159 P.2d at 948–49."

Consequently the requirements of NRS 34.170 are satisfied in this case.

III.   The general rule in Nevada is that mandamus will not lie to review the discretionary acts of a trial judge. This has been the inflexible rule as exemplified by the following citations of its application. Only a relatively small handful of exceptions have been made even in light of the extensive changes which have occurred in criminal and civil discovery. Those cases which recite the rule include:

1.   Mears v. State, 83 Nev. 3, 7, 422 P.2d 230 (1967) (mandamus and prohibition—criminal discovery).

2. Jowers v. Compton, 82 Nev. 95, 96, 411 P.2d 479 (1966) (mandamus—civil—will contest).

3. Wilmurth v. District Court, 80 Nev. 337, 340, 393 P.2d 302 (1964) (mandamus—civil—request to vacate pre-trial order).

4. Marshall v. District Court, 79 Nev. 280, 283, 382 P.2d 214 (1963) (certiorari—criminal discovery).

5. Franklin v. District Court, 85 Nev. 401, 402, 455 P.2d 919 (1969) (certiorari—criminal discovery).

6. Pinana v. District Court, 75 Nev. 74, 75, 334 P.2d 843 (1959) (mandamus—criminal discovery).

7. State v. McFadden, 46 Nev. 1, 6, 205 P. 594 (1922) (mandamus—civil—to expunge grand jury report).

8. State v. District Court, 40 Nev. 163, 166, 161 P. 510 (1916) (mandamus—civil—removal of administrator).

9. State v. Curler, 26 Nev. 347, 356, 67 P. 1075 (1902) (mandamus—civil—refusal to appoint appraisers).

10. Hoole v. Kinkead, 16 Nev. 217, 222 (1881) (mandamus—civil—commissioners' determination of best bid).

11. State ex rel. Hetzel v. Board of Commissioners of Eureka County, 8 Nev. 309, 310 (1873) (mandamus—civil—election of county officers).

12. State v. Curler, 4 Nev. 445, 447 (1869) (mandamus—civil—transfer of cause).

The Nevada Supreme Court has recognized that mandamus will lie in the following class of cases.

A. Proceedings which are not within jurisdiction of district court.

Culinary Workers v. District Court, 66 Nev. 166, 207 P.2d 990 (1949),

Gaming Control Bd. v. District Court, 82 Nev. 38, 409 P.2d 974 (1966).

B. Court's declination to use jurisdiction it possessed.

Roberts et al. v. Second Judicial District Court, 43 Nev. 332, 185 P. 1067 (1920),

Swisco, Inc. v. District Court, 79 Nev. 414, 385 P.2d 772 (1963),

Floyd v. District Court, 36 Nev. 349, 135 P. 922 (1913).

C. Noncompliance with statutory provisions.

State ex rel. Friedman v. District Court, 81 Nev. 131, 399 P.2d 632 (1965), and Shelton v. District Court, 64 Nev. 487, 185 P.2d 320 (1947). (Here the legal principle is the same although these cases arose under the rubric "prohibition.")

State ex rel. Cooper v. Reese, 57 Nev. 125, 59 P.2d 647 (1936).

D.  Where the court erred as a matter of law.

Dzack v. Marshall, 80 Nev. 345, 393 P.2d 610 (1964).

Smith v. Gabrielli, 80 Nev. 390, 395 P.2d 325 (1964).

I conclude that a trial court which so abuses its discretion relative to pretrial discovery matters to such an extent as to exceed its jurisdiction is subject to interlocutory review by writ of mandamus to an appellate court.

IV.  Law of other jurisdictions.

The application is recognized in other jurisdictions. In Arizona, after the courts had struggled with the problem of extraordinary writs for a number of years, the Arizona Supreme Court adopted Rules of Procedure for Special Actions—[Extraordinary Writs—Certiorari, Mandamus, Prohibition] 17 ARS Annot., 1969–70 Supp. (effective January 1, 1970). Rule 3 thereof is as follows:

"Rule 3.  Questions Raised

"The only questions that may be raised in a special action are:

(a) Whether the defendant has failed to exercise discretion which he has a duty to exercise; or to perform a duty required by law as to which he has no discretion; or

(b) Whether the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority; or

(c) *Whether a determination was arbitrary and capricious or an abuse of discretion.* [Emphasis supplied.]"

In commenting upon and explaining Rule 3, John Nelson, in The Rules of Procedure for Special Actions: Long Awaited Reform of Extraordinary Writ Practice in Arizona, 11 Ariz. L.Rev. 413, 423–24 (1969), said:

"There is no question that the more recent cases have tended to broaden the traditional scope of mandamus. The fact that discretion may have been exercised is no longer a complete bar to relief by mandamus since the courts have held that, although they normally will not control the exercise of discretion, they may do so if the respondent has acted arbitrarily or has abused his discretion. This does not mean that the petitioner must establish bad motivation—he need only show conduct which the court deems unreasonable or ultra vires.

" . . .

"Rule 3(c)

"Whether a determination was arbitrary and capricious or an abuse of discretion.

"In the past it was often said by Arizona courts that prohibition would not lie merely to correct error, irregularity, or mistake in the proceedings of an inferior tribunal. Similarly, '[c]ertiorari issues only to test jurisdiction, and not to determine whether it was erroneously exercised.' Although these principles have never been expressly repudiated, recent cases indicate that they are no longer binding standards, and that the court will 'see that essential justice is done.' For example, in discussing certiorari, the Supreme Court of Arizona in *State ex rel. Ronan v. Superior Court* [95 Ariz. 319, 390 P.2d 109 (1964)], stated:

"[I]f the court abused its discretion, or failed regularly to pursue its authority, which has the same meaning, the reviewing court might examine the evidence bearing on jurisdiction or abuse of discretion, but not with a view to determine facts or draw conclusions therefrom respecting guilt. [Footnotes omitted.]"

New York has adopted a special action rule merging the three remedies, N.Y.Civ.Prac. Laws and Rules § 7801 (McKinney's 1963) (§ 7803(3) dealing with abuse of discretion), and Colorado has to a considerable extent done the same, Colo.R.Civil Proc. 106 (1964).

As already noted, in California the trial court's discretion relative to discovery matters has long been subject to review by special writs.

In Daum v. Superior Court, Sutter County, 228 Cal.App.2d 283, 39 Cal.Rptr. 443, 445 (1964), an original proceeding to compel the Superior Court to permit petitioners to file a second amended complaint, the court stated:

"Section 1086 of the Code of Civil Procedure provides that the writ of mandamus will issue 'in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Sharff v. Superior Court, 44 Cal.2d 508, 282 P.2d 896, 64 A.L.R.2d 494.) Case law has established that mandate will lie, inter alia, to control judicial discretion when that discretion is abused; and that '[i]n a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered.' (State Farm Mutual Automobile Ins. Co. v. Superior Court, 47 Cal.2d 428, 432, 304 P.2d 13, 15; Hays v. Superior Court, 16 Cal.2d 260, 105 P.2d 975.)"

In Sharff v. Superior Court, 44 Cal.2d 508, 282 P.2d 896 (1955), the California Supreme Court held that plaintiff in a personal injury action who was ordered to undergo a physical

examination by defendant's doctor was entitled to have the assistance and protection of her attorney during the examination, and the denial of this right imposed an unlawful condition upon plaintiff's right to proceed to trial. Mandamus was held to be a proper remedy. The court summarized its holding, at 897, "We are of the view that the respondent court, in staying all proceedings until plaintiff should comply with the order directing her to submit to an oral and physical examination without the presence of her attorney, imposed an unwarranted condition on her right to have the case proceed to trial."

V.   The trial court abused its discretion.

A.   Referring back to the mandamus statute, NRS 34.160, all that is required to be shown is that the petitioner "is unlawfully precluded by such inferior tribunal" from a right "to which he is entitled. . . ." The trial court abused its discretion on three grounds:

1.   The petitioner only must show that the district judge acted unlawfully. NRCP 26–37 grant broad powers to litigants promoting and expediting the trial of civil matters by allowing those litigants an adequate means of discovery during the period of trial preparation. To prevent abuse of this expanded discovery process, the district court has been granted discretion in the granting of protective orders under NRCP 26(c) and 30(d). Rule 30(d) is inapplicable as it focuses on the time during the taking of the deposition.

Rule 26(c) provides:

"(c) Protective Orders.   Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following [sanctions]."

None of the grounds stated in the motion to vacate notice to take deposition relied upon by the lower court in its stay order of January 11, 1971 is allowed for by Rule 26(c) and therefore the district judge unlawfully stayed the deposition. In this light it may appear that the district court exceeded its jurisdiction. The case of Dzack v. Marshall, 80 Nev. 345, 393 P.2d 610 (1964), held that the district court had a *duty* to grant a 56(e) summary judgment under the facts of the case, that there was no remaining discretion left in the court. Conceptually, the same result could have been reached by stating that the lower court abused its discretion in not granting the judgment when the defendant had a legal right to it. Here,

the trial court either exceeded its jurisdiction or abused its discretion, both of which amount to the same.

2. The district court relied on the motion to vacate, the first ground stated therein being that "The discovery sought is premature." In this matter the discovery was not premature. It is difficult to predict if and when Howard R. Hughes will be available for deposition. His vagaries are common knowledge. In De Wagenknecht v. Stinnes, 102 U.S.App.D.C. 89, 250 F.2d 414 (1957), the Court of Appeals affirmed the district court's order, under F.R.Civ.P. 27, authorizing the taking of the deposition of a 74-year-old witness, saying at 417, "Mrs. Stinnes seeks by this proceeding to perpetuate the testimony of a person who has knowledge of certain events and transactions, many of which took place years ago. There can be no certainty that this testimony will still be available when the controversy is ready for litigation, since the witness is at present seventy-four years of age."

In Texaco, Inc. v. Borda, 383 F.2d 607 (3rd Cir. 1967), the appellate court held that the denial to the petitioner of leave to take the deposition from an individual whose civil antitrust action against the company had been stayed until determination of a related criminal antitrust action in which the company has been named co-conspirator was an abuse of discretion, where the individual was 71 years old, and the alleged conspiracy had occurred 11 years previously. See also, Martin v. Reynolds Metals Corporation, 297 F.2d 49 (9th Cir. 1961), and Block v. Superior Court of Los Angeles County, 219 Cal.App.2d 469, 33 Cal.Rptr. 205 (1963), both of which illustrate the policy of allowing liberal discovery by deposition to perpetuate testimony.

3. The stay order of January 19, 1971 staying all proceedings until Maheu showed compliance with the turnover orders of December 12 and 24, 1970 and the motion in support of the stay order clearly show that this stay order was imposed as a sanction to force compliance with the court's prior order. As pointed out in the foregoing analysis, Maheu has a right to depose Howard R. Hughes (NRCP 30), that certain designated grounds are set out in NRCP 26(c) for the protection of any person from whom discovery is sought, namely, protection from annoyance, embarrassment, oppression, or undue burden or expense and that none of these grounds includes a stay to force or precipitate compliance with a court order. Other rules in the nature of contempt proceedings are provided for that purpose. The district judge abused

his discretion and in effect acted without jurisdiction. See Hauk v. Superior Court of Los Angeles County, 38 Cal.Rptr. 345, 391 P.2d 825 (1964).

I concur in the result reached by the majority and trust that discovery, including the deposition of Howard R. Hughes, will now proceed forthwith to the end that the merits of the action will be resolved.

MOWBRAY, J., dissenting:

Respectfully, I must object to the issuance of the writs of prohibition and mandamus ordered by the court in its opinion filed today. Nevada precedent, in my opinion, does not support the ruling of the court.

The background of this litigation may be summarized as follows: Petitioner Maheu was the chief executive of Hughes Nevada Operations, which comprised all of Hughes Tool Company's business activities in Nevada. On December 4, 1970, Maheu was relieved of that position. Immediately, he sought and obtained a temporary restraining order prohibiting those seeking his ouster from taking any further action to do so.[1] At this time, many of the papers, files, and records of Hughes Tool Company were removed from the offices of Hughes Nevada Operations. Hughes Tool Company then filed a complaint in the district court to enjoin Maheu from asserting any control or authority over Hughes Nevada Operations.[2] The two actions were consolidated. Evidentiary hearings were held before Judge Babcock, who on December 24, 1970, dissolved the temporary restraining order previously obtained by Maheu and granted the preliminary injunction sought by Hughes Tool Company, which enjoined Maheu from interfering with or exercising any control over the activities of Hughes Nevada Operations.

Maheu on December 31, 1970, filed a $50 million counterclaim against Hughes Tool Company, seeking damages for breach of his employment contract. With the filing of the counterclaim, Maheu gave notice of the taking of Hughes's deposition, scheduled for January 11, 1971.[3] Judge Babcock, however, on motion of Hughes Tool Company, vacated the January 11 date and stayed the taking of the Hughes deposition

[1]Maheu v. Davis, District Court Case No. 84241, designated No. 6598 on appeal.

[2]Hughes Tool Co. v. Maheu, District Court Case No. 84259, designated No. 6597 on appeal.

[3]Hughes is the sole stockholder of Hughes Tool Company.

until further order of the court. Thereafter, on January 19, 1971, Hughes Tool Company filed a motion to stay any further action on behalf of Maheu's $50 million counterclaim until Maheu had returned all the books, records, and files of Hughes Tool Company. On January 21, 1971, Petitioner Maheu filed a motion to disqualify Judge Babcock on the ground of actual prejudice. Recognizing that the motion to disqualify presented an impediment to further proceedings, the court, on February 3, 1971, ordered a stay of all proceedings until the motion could be heard and ruled upon by another judge. District Judge Thomas O. Craven of the Second Judicial Dictrict was assigned to hear the motion. He did so, and after hearing the motion he denied it on March 16, 1971.

Judge Babcock then called a calendar conference of all parties for April 1, 1971, for the purpose of determining and scheduling the order in which the pending matters connected with the litigation would be heard. The transcript of the proceedings of April 1, 1971, reflects the purpose of the conference:

"THE COURT: As the Court noted in its decision and order of March 3, 1971, the law is well settled that the trial court has broad case discretion to manage discovery proceedings. The parties are now underway on this apparent rocky venture to discover facts and evidence in support of and in opposition to respective claims.

"It occurs to the Court that before there can be true discovery, and in the conservation of the Court's time—and this time I am not concerned with the litigants' time, but with the Court's time—there should be and there must be a resolution of the matter of books and records. We are not concerned about matters of contempt.

"I am only examining the posture of these proceedings with a view of giving some expedition, because already there has been a delay of two months by reason of the filing of a motion to change the presiding judge.

"I wish to assure the parties that there will be no delay practiced in this Court on that issue. I expect the parties to be forthwith, forthright to the Court, so that there can be a real search for the truth of the matters. And certainly a search for the truth would require, and does require, that the books and records, which relate to matters material to this cause, be before the Court and be available to the parties.

"This does not interminably delay the taking of any depositions. Because this Court will give expedition to the proceedings as it relates to the matter of records, a resolution of those

motions, and will not countenance from the parties any delay-
ing tactics, which has been suggested by counsel for Maheu,
should this Court undertake a resolution of the matter of
records."

It was decided that the court would first hear and consider
Hughes Tool Company's motion filed January 19, 1971, seek-
ing a stay order on Maheu's counterclaim.[4] The evidentiary
hearings followed at the convenience of the court's and coun-
sel's calendars, on April 19–20, May 3–4, and June 21–22,
1971, until they were halted by this court on July 12, 1971,
after Maheu filed this petition on June 14, 1971, seeking the
extraordinary writs.

---

[4]Counsel for Maheu objected to the scheduling given the evidentiary
hearings. The following colloquy occurred between Judge Babcock and
counsel for petitioner at the calendar meeting:

"THE COURT: Counsel, I wish to assure you that Mr. Maheu, nor
the Hughes Tool Company, is not going to manage the proceedings that
are before this Court. I assure you of that fact.

"MR. GALANE: Well, I would like to answer the Court, why they
will accomplish everything that they want through priority of hearing.

"Now, your Honor, I would like to be heard. I am not suggesting
either litigant will control the Court. What I am saying is the Court,
once it starts—

"THE COURT: Are you suggesting that this Court does not have
sense enough to terminate a hearing when it has determined that it has
heard enough evidence?

"MR. GALANE: Sometimes a Court cannot terminate a hearing
without violating due process. I am not speaking of the Court's sense.
Does your Honor think that I would suggest that this Court lacks the
perception and intelligence not to analyze a proceeding? But a Court
sometimes doesn't have the power to terminate a hearing.

"THE COURT: You are suggesting, Mr. Galane, that if we go to the
matter of records, that Hughes Tool Company can keep this Court on
the bench day after day after day, or hearing after hearing after hear-
ing, ad infinitum?

"MR. GALANE: Look at the motion.

"THE COURT: And I can assure you that if that is your representa-
tion or belief, that this, sir, will not be the fact, depending upon the
matter upon which this Court determines.

"MR. GALANE: If I can avoid it, I don't argue with the Judge. But
I will show you how skillfully they can manipulate it, with ease. May I
remind the Court that I was the one who said to the Court that they
may have in the back of their mind—and Miss Lea was the spokesman,
and as long as I live I will never forget it—I said they will try to manip-
ulate this record to file some motion to block proceedings, and she stood
up and said, Mr. Galane is overanticipating. And I live to see the truth
of my prediction.

"So if your Honor will bear with me.

"THE COURT: I will bear with you, Mr. Galane. But I just want
you to understand that this Court is the manager of this Court, not the
litigants."

1. Maheu in this proceeding seeks a writ of prohibition enjoining Judge Babcock from taking any further action on the January 19 stay motion of Hughes Tool Company. Hughes Tool Company's principal reason in seeking the stay is that the company is unable to respond to Maheu's claims while Maheu retains possession of the Company's records. Maheu asserts that he has returned all the Company's records. The Company claims that he has not done so. Cf. Rasbury v. Bainum, 387 P.2d 239 (Utah 1963). Judge Babcock was conducting evidentiary hearings to determine this very issue when our court stayed all proceedings below on July 12, 1971. In my opinion, Judge Babcock as the trial judge should be permitted to resolve the question. By the ruling announced by this court today, he is now barred from doing so. Writs of mandamus and prohibition are extraordinary writs and are traditionally never granted unless the court is acting without jurisdiction. They may not be utilized as a substitute for an appeal. The reason for the rule is obvious, as this case demonstrates. To utilize the writs as a substitute for an appeal delays the processing of the case and can conceivably emasculate the orderly administration of justice. That is the basis for the rule that writs of prohibition and mandamus are available only if the lower court's actions are in excess of its jurisdiction or if there is no plain, speedy, and adequate remedy in the ordinary course of the law. Both the Nevada statutes and Nevada case law have so held. NRS 34.170 provides:

"This writ [of mandate] shall be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It shall be issued upon affidavit, on the application of the party beneficially interested."

NRS 34.320 provides:

"The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person exercising judicial functions, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person."

And, finally, NRS 34.330 provides:

"The writ [of prohibition] may be issued only by the supreme court to an inferior tribunal, or to a corporation, board or person, in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It is issued upon affidavit, on the application of the person beneficially interested."

This court ruled in Pinana v. District Court, 75 Nev. 74, 75, 334 P.2d 843 (1959):

"It is the settled law of this state that mandamus will not lie to control judicial discretion or to review the propriety of judicial action. State ex rel. Phillips v. District Court, 46 Nev. 25, 207 P. 80; State ex rel. Webber [sic] v. McFadden, 46 Nev. 1, 205 P. 594; State v. Ninth Judicial District Court, 40 Nev. 163, 161 P. 510."

The concurring majority opinion states:

"The general rule in Nevada is that mandamus will not lie to review the discretionary acts of a trial judge. This has been the inflexible rule as exemplified by the following citations of its application. Only a relatively small handful of exceptions have been made even in light of the extensive changes which have occurred in criminal and civil discovery. Those cases which recite the rule include:

"1. Mears v. State, 83 Nev. 3, 7, 422 P.2d 230 (1967) (mandamus and prohibition—criminal discovery).

"2. Jowers v. Compton, 82 Nev. 95, 96, 411 P.2d 479 (1966) (mandamus—civil—will contest).

"3. Wilmurth v. District Court, 80 Nev. 337, 340, 393 P.2d 302 (1964) (mandamus—civil—request to vacate pretrial order).

"4. Marshall v. District Court, 79 Nev. 280, 283, 382 P.2d 214 (1963) (certiorari—criminal discovery).

"5. Franklin v. District Court, 85 Nev. 401, 402, 455 P.2d 919 (1969) (certiorari—criminal discovery).

"6. Pinana v. District Court, 75 Nev. 74, 75, 334 P.2d 843 (1959) (mandamus—criminal discovery).

"7. State v. McFadden, 46 Nev. 1, 6, 205 P. 594 (1922) (mandamus—civil—to expunge grand jury report).

"8. State v. District Court, 40 Nev. 163, 166, 161 P. 510 (1916) (mandamus—civil—removal of administrator).

"9. State v. Curler, 26 Nev. 347, 356, 67 P. 1075 (1902) (mandamus—civil—refusal to appoint appraisers).

"10. Hoole v. Kinkead, 16 Nev. 217, 222 (1881) (mandamus—civil—commissioners' determination of best bid).

"11. State ex rel. Hetzel v. Board of Commissioners of Eureka County, 8 Nev. 309, 310 (1873) (mandamus—civil—election of county officers).

"12. State v. Curler, 4 Nev. 445, 447 (1869) (mandamus—civil—transfer of cause)."

I agree with that part of the concurring majority opinion.

2. In Hughes Tool Co. v. Maheu, District Court Case No. 84259, designated No. 6597 on appeal, the court granted a preliminary injunction on December 24, 1970, enjoining Maheu from interfering with or exercising any control over

the activities of Hughes Nevada Operations, from which preliminary injunction Maheu has taken appeal, the merits of which are not before us in this proceeding. The order granting the injunction also provided:

"IT IS FURTHER ORDERED that defendants, their respective agents, servants, employees and attorneys, and all persons in active concert and participation with any of them, shall forthwith return or cause the return to plaintiff of all books, documents, records and communications of plaintiff or pertaining directly or indirectly to the business operations or affairs of plaintiff, including all copies or other reproductions [sic] of same, and all other property belonging to plaintiff, as may be in the possession, custody or control of defendants directly or indirectly."

On December 31, 1970, Maheu filed his $50 million counterclaim in the Hughes Tool Company action for damages resulting from the breach of an alleged oral contract of lifetime employment. It was on this day, December 31, 1970, that Maheu gave notice to take Hughes's deposition for 10:00 a.m., January 11, 1971. On January 11, 1971, Maheu also filed formal notice of appeal from the order of December 24, 1970, granting the preliminary injunction. He also sought an order under the provisions of NRCP 73(d) directing the filing of a supersedeas bond, as he claimed he had a right to have bond set and thereby obtain a stay of the preliminary injunction pending appeal to this court. Judge Babcock denied the application for an order setting the amount of supersedeas bond and refused, thereby, to stay the preliminary injunction. It is this action, as I understand the majority opinion, that is the predicate for their finding that Judge Babcock has exceeded his jurisdiction in entertaining the evidentiary hearings on the Hughes Tool Company motion to stay further action on Maheu's counterclaim.

On January 15, 1971, Maheu filed an unsworn statement in which he represented that he had fully complied with the provisions of the preliminary injunction directing him to return all the books, records, and files of Hughes Nevada Operations. A miniscule amount of material was returned by Maheu; yet Hughes Tool Company alleges that some 24 four-drawer file cabinets were left completely empty after Maheu's departure. Hughes Tool Company then filed, on January 19, 1971, its motion to stay further proceedings on Maheu's counterclaim until the court could determine the status of the alleged missing records.

The majority have ruled that prohibition will issue to bar

Judge Babcock from concluding the evidentiary hearings because the hearings are nothing more than an attempt to enforce the mandatory provisions of the preliminary injunction that Judge Babcock refused to stay pending appeal to this court, by not fixing a supersedeas bond. In support of their ruling that prohibition will lie, the majority have cited Clute v. Superior Court, 99 P. 362 (Cal. 1908); Kettenhofen v. Superior Court, 358 P.2d 684 (Cal. 1961); Schwarz v. Superior Court, 43 P. 580 (Cal. 1896); and Dewey v. Superior Court, 22 P. 333 (Cal. 1889). All of these cases involved contempt proceedings. The petitioners seeking the extraordinary writs had been found guilty of contempt of court and ordered punished therefor. They sought review of the orders finding them in contempt of court and a stay of their punishment pending appeal therefrom. The appellate court in each case properly granted the writ staying the enforcement of the contempt order until it was reviewed; otherwise, the appeal would have been moot. Not so in the instant proceedings. The hearings on Hughes Tool Company's stay order are not contempt proceedings. They arise out of Maheu's counterclaim for alleged breach of contract of employment, and they are totally independent of the preliminary injunction proceedings.[5] Therefore, I would rule that Hughes Tool Company's motion to stay is merely an evidentiary proceeding that arises out of Maheu's counterclaim for breach of contract and that the hearing is not in the nature of a contempt proceeding and that Judge Babcock did not act in excess of his jurisdiction.

3. Judge Babcock has never denied petitioner the right to take the deposition of Howard R. Hughes. He has merely postponed the scheduling of the Hughes deposition. The cases cited by the majority as a basis for the issuance of the writ mandating Judge Babcock to set aside the order staying Hughes's deposition are, in my opinion, not relevant in these proceedings. Those cases all involved a factual situation where a trial judge had flatly denied the petitioner a clear legal right and from which petitioner had no redress but to seek the relief of an extraordinary writ, or they involved direct appeals to the appellate courts from final judgments. For example, in Texaco, Inc. v. Borda, 383 F.2d 607 (3d Cir. 1967), cited by the

[5]Maheu testified in the court below that he did remove certain Hughes Tool Company records. He represented that he returned all the documents. Yet in his present argument he urges that he had no duty to release the documents and that the order requiring him to do so should be stayed pending appeal. It would be quite anomalous if petitioner had a right to a stay of the injunction requiring him to do acts that he concedes should have been done and that he claims were done.

majority, the trial judge had denied the petitioner's right to take a 71-year-old woman's deposition, and he would not entertain petitioner's motion to depose the witness until *after* the termination of certain criminal proceedings that conceivably would not be concluded for several years. Even in the Borda case, the court said, at 608:

"We do not agree that Judge Augelli [the trial judge] abused his discretion in staying all other proceedings in Borda's case pending determination of the Government's criminal action.

"On the latter score it is settled law that '* * * the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.' Landis v. North American Co., 299 U.S. 248, 254–255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)."

Judge Babcock was attempting to do this very thing until this court interrupted and stayed all pending proceedings in July 1971.

The concurring majority opinion cites as authority for the granting of the writ of mandate Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 614 (1964). This case is not applicable, because it was an appeal from a final default judgment.[6]

For these reasons, I would deny the petition for the writs. Judge Babcock has not exceeded his jurisdiction. His scheduling of the stay motion before the other pending motions was a discretionary act inherent in his power to control the disposition of the motions on his docket. He has not denied petitioner the right to depose Hughes. Petitioner may not complain about delays in these proceedings. He delayed the proceedings with his motion for a new judge. A reading of the transcripts of the April, May, and June hearings reveals multiple delays. I can foresee, by the pronouncement made by the court today, the filing of unlimited petitions for extraordinary relief from litigants who feel aggrieved by the management of their cases, which petitions will result in further continuances and frustrations in the already painful delay in the disposition of litigation.

---

[6]Likewise, the Arizona authorities cited by the majority are not the law of Nevada.